Daniel. R. GRUNDY, Appellant–
Petitioner,

v.

STATE of. Indiana, Appellee–Respondent.

No. 49A04–9704–PC–131.

Court of Appeals of Indiana.

June 3, 1998.

Susan K. Carpenter, Public Defender, Victoria Christ, Deputy Public Defender, Indianapolis, for Appellant–Petitioner.

Jeffrey A. Modisett, Attorney General, Carol A. Nemeth, Deputy Attorney General, Indianapolis, for Appellee–Respondent.

## OPINION

GARRARD, Judge.

### STATEMENT OF THE CASE

Daniel R. Grundy ("Grundy") appeals the denial of his petition for post-conviction relief. We affirm in part, reverse in part, and remand.

### ISSUES

Grundy presents several issues for our review which we consolidate and restate as:

1. Whether the trial court committed fundamental error when it failed to instruct the jury on the specific intent element of attempted murder.

2. Whether the trial court erred when it instructed the jury on accomplice liability.

3. Whether the admission of testimony regarding threats made to a prosecution witness constituted fundamental error.

4. Whether Grundy was denied the effective assistance of trial and appellate counsel.

### FACTS AND PROCEDURAL HISTORY

The facts as recited by this court on direct appeal are as follows:

The victim, Bruce Wigginton, was left without transportation in the area of 38th Street and Capitol Avenue in Indianapolis at about 12:30 A.M. on January 16, 1988. Wigginton approached a Shell gas station/mini-mart to use a pay phone to call a cab. He asked a Shell employee the number of a cab company. The employee did not know the number but inquired about Wigginton's desired destination.

Grundy overheard the conversation and agreed to give Wigginton a ride for twenty dollars. Wigginton entered the car and sat in the front seat. There were a number of other passengers in the car, including co-defendant Billy Shaffer. While proceeding down 38th Street, Grundy told Wigginton he was experiencing car problems. Grundy then stopped the car in a driveway and Wigginton got out of the car with Grundy to look at the engine.

Wigginton poured some transmission fluid into the car. He took the empty can to a nearby trash container, threw it in, and started walking back to the car. As he was walking back to the car one of the men from the car hit him in the head. Wigginton fell to the ground and Grundy and another man from the car began kicking him. Wigginton's money, watch, coat

and other personal items were taken from him and he was left lying on the ground.

Grundy attempted to drive away from the scene but his car became stuck in a ditch. Grundy and his passengers abandoned the car. When the car was later discovered and searched, the police found items belonging to Wigginton. Other items were found on the ground nearby.

At about 7:30 A.M., Wigginton managed to stagger to a nearby house. The police and an ambulance were called. Wigginton had an open head wound and laceration above his right ear. A portion of his brain was protruding from the wound and his brain was swelling and hemorrhaging due to a severe bruise caused by a fractured skull bone. Wigginton also had a fractured rib, a punctured lung, and fractured vertebrae in his back. The injuries were life-threatening and only immediate surgery saved Wigginton's life. He will continue to have physical and mental problems because a portion of his brain had to be removed in surgery.

*Grundy v. State,* No. 49A04–8907–CR–320, 555 N.E.2d 533 (Ind.Ct.App.1990).

Following a jury trial held on January 23 through January 25, 1989, the jury found Grundy guilty of attempted murder, a class A felony, and robbery, a class A felony. The trial court sentenced Grundy to forty years on the attempted murder count and thirty years on the robbery count, to be served consecutively, for a total of seventy years imprisonment.

On direct appeal, this court affirmed Grundy's convictions and sentences by memorandum decision. *See id.* Thereafter, on January 30, 1996, Grundy filed his petition for post-conviction relief. An evidentiary hearing was held and, on December 31, 1996, the post-conviction court subsequently entered its findings of fact and conclusions of law denying Grundy's petition.

### DISCUSSION AND DECISION
#### Standard of Review

■ The purpose of a petition for post-conviction relief is to raise issues unknown or unavailable to a defendant at the time of the original trial and appeal. *Lockhart v. State,* 632 N.E.2d 374, 375 (Ind.Ct.App.1994), *trans. denied.* "Thus, post-conviction relief is not a 'super appeal' which allows the rehashing of prior proceedings regardless of the circumstances surrounding them." *Collier v. State,* 572 N.E.2d 1299, 1301 (Ind.Ct.App.1991), *trans. denied.* When the petitioner has already been afforded the benefit of a direct appeal, post-conviction relief contemplates a rather small window for further review. *Montano v. State,* 649 N.E.2d 1053, 1056 (Ind.Ct.App.1995), *trans. denied.* The petitioner must establish relief by a preponderance of the evidence. Ind.Post–Conviction Rule 1, § 5.

■ On appeal from the denial of a petition for post-conviction relief, we neither reweigh the evidence nor judge the credibility of witnesses. *Montano,* 649 N.E.2d at 1056. To prevail on appeal from the denial of his petition, the petitioner must show that the evidence is without conflict and leads only to a conclusion opposite that reached by the post-conviction court. *Id.* It is only where the evidence is without conflict and leads to but one conclusion, and the trial court has reached the opposite conclusion, that the decision will be disturbed as being contrary to law. *Spranger v. State,* 650 N.E.2d 1117, 1119 (Ind.1995).

### Issue One: Attempted Murder Jury Instruction

We first address Grundy's contention that the trial court committed fundamental error when it failed to instruct the jury on the specific intent element of attempted murder. The attempted murder instruction given at Grundy's trial reads in pertinent part as follows:

To convict the defendant the State must have proved each of the following elements: The Defendants Daniel Grundy and William Shaffer

1. Knowingly
2. Engaged in conduct by knowingly striking and kicking William B. Wigginton and;
3. That the conduct was a substantial step toward the commission of the

crime of murder: That is the knowing and intentional killing of another human being.

If the State failed to prove each of these elements beyond a reasonable doubt, you should find the defendant not guilty.

If the State did prove each of these elements beyond a reasonable doubt, you should find the defendants guilty of the crime of attempt[ed] murder, a Class A felony.

Trial Record at 97.

■ The trial court clearly erred when it gave the jury this instruction because it fails to advise the jury that in order to find a defendant guilty of attempted murder, it must find that the defendant acted with the specific intent to kill. *Clark v. State*, 668 N.E.2d 1206, 1210 (Ind.1996), *cert. denied* ⸺ U.S. ⸺, 117 S.Ct. 1438, 137 L.Ed.2d 545 (1997); *Spradlin v. State*, 569 N.E.2d 948, 950 (Ind.1991). Indeed, instructing the jury with a list of elements which suggests that it may convict on the lesser "knowingly" mens rea, such as here, constitutes error. *Beasley v. State*, 643 N.E.2d 346, 348 (Ind.1994). Because Grundy failed to object to this instruction at trial, we must consider whether the failure of the trial court to give a proper specific intent instruction constitutes fundamental error for which the post-conviction court must reverse.

■ Our supreme court has recently held that in post-conviction attempted murder cases, the failure to instruct on specific intent does not constitute fundamental error where only identity is challenged and the defendant's specific intent to kill cannot be seriously disputed. *Swallows v. State*, 674 N.E.2d 1317, 1318 (Ind.1996). Although in the instant case the general defense tactic was to put identity at issue and to challenge whether Grundy was indeed the one who administered the near fatal blows to Wigginton, the facts of the case coupled with the admissions of the trial attorney during the post-conviction hearing lead us to believe that Grundy's intent was also squarely at issue.

Here, Grundy and a group of individuals, including two other men, gave Wigginton a ride. At some point, one or all of the group decided to rob Wigginton of his belongings. One of the men hit Wigginton on the head, and then Grundy and another man from the car began kicking and hitting Wigginton and proceeded to rob him. It is unclear whether the men intended to merely beat Wigginton up to the point where they could rob him, or whether the men acted with the specific intent to kill. Indeed, some of the trial testimony from witnesses indicated that Grundy may have questioned the use of such violence against Wigginton.

Moreover, during the post-conviction hearing, Grundy's trial attorney testified that the issue of identity became critically important as the case developed at trial. He stated that although the general theory of the defense was that Grundy was not the perpetrator, unanticipated developments at trial brought intent into issue.

This is not a case where we can say that the specific intent to kill "cannot seriously be disputed." *See id.* We conclude that the failure of the trial court to give a proper jury instruction constitutes fundamental error for which the post-conviction court should have reversed despite Grundy's lack of contemporaneous objection. Grundy's conviction for attempted murder is vacated.[1]

■ We note that on direct appeal, this court found sufficient evidence to sustain Grundy's conviction for attempted murder. Accordingly, retrial of Grundy is permissible on remand. *See Warner v. State*, 579 N.E.2d 1307, 1311 (Ind.1991) ("Though double jeopardy bars retrial in cases of reversal for insufficient evidence, it does not bar retrial in cases of reversal for trial error.").

### Issue Two: Accomplice Liability Instruction

Next, Grundy contends the trial court erred when it read to the jury Instruction

---

1. Because we have vacated Grundy's conviction for attempted murder, we need not address Grundy's contention that his enhanced sentences for attempted murder and class A robbery violate double jeopardy.

Number 26 on accomplice liability. The trial court instructed the jury as follows:

> By the laws of this State, a person who knowingly or intentionally aids another person in committing an offense is guilty of that offense as though he were the principal. A defendant is responsible for the acts of his confederates as well as his own. The Court instructs you, however, that the defendant can be held responsible on this theory only for acts done before or during the commission of the offense charged.

Record at 106. We note that, although not acknowledged by Grundy, the court went on to instruct the jury:

> Neither mere presence at the scene of a crime, nor failure to oppose or report a crime, without more, is sufficient to convict one of the crime. Presence at the scene of a crime, without more, does not show participation in that crime.

Record at 107.

Citing *Small v. State*, 531 N.E.2d 498 (Ind. 1988), Grundy argues that Instruction Number 26 constitutes reversible error because the jury could have convicted merely because of his relationship to his codefendants. The instruction in *Small* provided language that "It is also to the law that a Defendant is responsible for the acts of his codefendants as well as his own acts. Any act of one is attributable to them all." *Id.* at 499. Our supreme court found the instruction erroneous because it permitted the jury to find the defendant responsible for a shooting "without regard to whether that act occurred while he was acting in concert in carrying out the robbery. It requires only that the appellant and the person who inflicted the gunshot would have the relationship of codefendants." *Id.*

■ Our review of the accomplice instruction in the instant case does not reveal the same fatal defects as are present in *Small*. Here, the jury was instructed that a defendant is responsible for the acts of his "confederates" and clearly required the jury to find more than merely a codefendant relationship when it convicted Grundy of class A robbery. The jury was also instructed that mere presence at the scene of a crime, without more, does not show participation in that crime. When read as a whole, we cannot say that these instructions misstated the law or misled the jury. We find no reversible error.

### Issue Three: Admission of Witness Testimony

Grundy maintains the trial court erred when it permitted prosecution witness Kathy Render to testify that, after the crimes occurred, she received threatening telephone calls from an unknown person trying to locate her nephew, codefendant Billy Shaffer. Render testified that the caller was "anxious to talk to [Shaffer]," was a "mean-type person" and identified himself as "James." Record at 570–72. Although Grundy's trial counsel objected to the testimony on the basis of hearsay, and the trial court sustained the objection, counsel neither requested that the testimony be stricken nor requested an admonishment to the jury. Accordingly, in order to avoid waiver, Grundy contends that the admission of Render's testimony constituted fundamental error.

■ Grundy contends that Render's testimony was inadmissible and violated his right to a fair trial because, without proper foundation connecting him to the threats (if the calls can even be characterized as "threats"), the jury was left with the erroneous impression that Grundy was behind the threats. First, we cannot say that Render's statement that a person named "James" telephoned her looking for Shaffer would leave the impression in the jury's mind that Grundy was the individual behind the phone calls. In addition, Grundy has failed to show how he was prejudiced by Render's testimony. Shaffer had already testified that Grundy telephoned him the day after the crimes to ask if Shaffer had called police. When Shaffer responded that he had not, Grundy said "Good. Well, if you do, we're going to kill you. You'll get the same treatment." Record at 521. Accordingly, even if the jury assumed that Grundy was behind the telephone calls made to Render, her testimony was merely cumulative of Shaffer's prior and more specific testimony.[2]

---

2. Grundy does not challenge the admissibility of Shaffer's testimony.

Grundy has not shown how he was prejudiced by Render's testimony or that any error in its admission constituted a clearly blatant violation of basic and elementary principles, and the harm or potential for harm therefrom was substantial and appears clearly and prospectively. *See generally, Turner v. State*, 682 N.E.2d 491, 497 (Ind. 1997). We find no fundamental error.

### Issue Four: Ineffective Assistance of Counsel

Finally, in order to avoid waiver of all the issues raised in his post-conviction petition, Grundy asserts he was denied the effective assistance of counsel at trial and on direct appeal due to his counsels' failure to preserve for our review those issues we have already addressed. Grundy's ineffective assistance claim is merely an attempt to avoid waiver and, thus, we chose to preempt his challenge and address those issues on the merits. To succeed on a claim of ineffective assistance, the defendant must show a reasonable probability that, but for counsel's deficient performance, the result of the proceedings would have been different. *Spranger v. State*, 650 N.E.2d 1117, 1121 (Ind.1995). Because, aside from Issue One, Grundy's claims fail on the merits, he cannot show that, but for his counsels' failure to preserve the issues, the result of the proceedings would have been different. Grundy has not shown his attorneys were ineffective.

Affirmed in part, reversed in part, and remanded.

SHARPNACK and RUCKER, JJ., concur.