**Brian C. EDINGTON, Appellant–Petitioner,**

v.

**STATE of Indiana, Appellee–Respondent.**

**No. 50A03–0212–PC–448.**

Court of Appeals of Indiana.

July 31, 2003.

Brian C. Edington, Michigan City, IN, Appellant pro se.

Steve Carter, Attorney General of Indiana, Justin F. Roebel, Deputy Attorney General Indianapolis, IN, Attorneys for Appellee.

## OPINION

KIRSCH, Judge.

Brian C. Edington was convicted of attempted murder as an accomplice,[1] a Class A felony. On direct appeal, this court rejected Edington's claims of insufficiency of the evidence, inadmissibility of identification testimony, and errors in sentencing and affirmed his convictions in an unpublished memorandum decision. *Edington v. State,* No. 50A05–9706–CR–217, 699 N.E.2d 335 (Ind.Ct.App. July 13, 1998). Edington filed a *pro se* petition for post-conviction relief. The post-conviction court denied the petition, and Edington now appeals raising two issues, of which we find the following dispositive: whether the trial court committed fundamental error when it instructed the jury on the elements of attempted murder as an accomplice but failed to include the element of specific intent to kill.

We reverse the decision of the post-conviction court, grant Edington's petition for post-conviction relief, and remand for a new trial.

---

1. *See* IC 35–41–2–4; IC 35–41–5–1; IC 35–42–1–1.

## FACTS AND PROCEDURAL HISTORY

The facts most favorable to the verdict and recited by this court on direct appeal reveal that:

> Roosevelt Patterson was a confidential informant for the Marshall County Drug Task Force. During the early morning hours of February 7, 1996, Patterson went to the trailer where Andy Kneller lived. In addition to Kneller, several people were present at the trailer including Edington, Larry Baltis and Lori Cowger. When Patterson entered the trailer, Kneller began yelling at Patterson and struck him. Patterson fell to the ground as Kneller continued to beat and kick him.
>
> Kneller proceeded to pour lighter fluid over Patterson's beaten body and wrap his body in a blanket. Edington then helped Kneller carry Patterson's body out to Jasper Tolson's car. After placing Patterson in the car, Edington got into the car with Kneller and Tolson and drove away. After riding a very short distance, Edington exited the car and told Kneller that he would see him later. At Kneller's direction, Tolson drove the car out into the country. Kneller dragged Patterson from the car, poured more lighter fluid on Patterson, and set him on fire.

*Id.* at 2–3. Tolson and his wife went immediately to the police to report the incident. Police found Patterson's battered body and assisted him in receiving medical treatment. Apparently, the fire extinguished before burning Patterson too badly. Patterson survived the ordeal.

Edington now appeals the post-conviction court's denial of his petition for post-conviction relief.

## DISCUSSION AND DECISION

 A post-conviction relief petitioner bears the burden of proving that he or she is entitled to relief by a preponderance of the evidence. *Walker v. State,* 779 N.E.2d 1158, 1160 (Ind.Ct.App.2002), *trans. denied*

(2003). We neither reweigh the evidence nor judge witness credibility. *Id.* Our court will not set aside the trial court's denial of a post-conviction petition unless " 'the evidence as a whole leads unerringly and unmistakably to a conclusion opposite to that reached by the trial court.' " *Lambert v. State,* 743 N.E.2d 719, 726 (Ind. 2001), *cert. denied,* 534 U.S. 1136, 122 S.Ct. 1082, 151 L.Ed.2d 982 (2002); *Miller v. State,* 702 N.E.2d 1053, 1058 (Ind.1998), *cert. denied,* 528 U.S. 1083, 120 S.Ct. 806, 145 L.Ed.2d 679 (2000). In making this determination, we consider only the evidence that supports the decision of the post-conviction court, together with any reasonable inferences to be drawn therefrom. *Badelle v. State,* 754 N.E.2d 510, 521 (Ind.Ct.App.2001), *trans. denied.* "It is only where the evidence is without conflict and leads to but one conclusion, and the post-conviction court has reached the opposite conclusion, that the decision will be disturbed as being contrary to law." *Walker,* 779 N.E.2d at 1160. Post-conviction proceedings do not provide a petitioner with an opportunity for a super-appeal. *Wrinkles v. State,* 749 N.E.2d 1179, 1187 (Ind.2001), *cert. denied,* 535 U.S. 1019, 122 S.Ct. 1610, 152 L.Ed.2d 624 (2002).

 To the extent that Edington alleges fundamental error, we further note that the law "does not permit relitigation of issues that were available on direct appeal." *Bunch v. State,* 778 N.E.2d 1285, 1289 (Ind.2002). " 'In post-conviction proceedings, complaints that something went awry at trial are generally cognizable only when they show deprivation of the right to effective counsel or issues demonstrably unavailable at the time of trial or direct appeal.' " *Id.* at 1289–90 (citing *Sanders v. State,* 765 N.E.2d 591, 592 (Ind.2002)); *Canaan v. State,* 683 N.E.2d 227, 235 n. 6 (Ind.1997), *cert denied,* 524 U.S. 906, 118 S.Ct. 2064, 141 L.Ed.2d. 141 (1998). An issue characterized as fundamental error is available only on appeal and is raised when there has been a failure to assign an error which is so egregious that it must be decided by the appellate court because of its

fundamental nature. *Woodson v. State,* 778 N.E.2d 475, 478 (Ind.Ct.App.2002). Because of the limits of review in post-conviction proceedings, any issue raised in a post-conviction petition must be raised within the context of the post-conviction rules, e.g., denial of Sixth Amendment right to effective assistance of counsel or an issue unavailable to the petitioner at the time of his trial and direct appeal. *Id.*

Edington contends now, as he did before the post-conviction court, that the trial court erred when it failed to inform the jury that to find him guilty of attempted murder as an accomplice the jury had to find that he had the specific intent to kill Patterson. At trial, counsel failed to object to the instructions, and the issue was not raised on direct appeal. To avoid waiver, Edington claims that this error was fundamental.

Edington's claim of fundamental error in the accomplice instruction was not available at the time of his trial or on direct appeal because *Bethel v. State,* 730 N.E.2d 1242 (Ind.2000) and its progeny, the cases supporting his argument, were yet to be decided. Because Edington's claim that the trial court's failure to instruct on the specific intent element for accomplice liability in attempted murder in the final jury instructions was not recognized by our supreme court until after Edington's trial and direct appeal his claim raises an issue that was demonstrably unavailable at the time of trial and direct appeal and may properly be brought by seeking post-conviction relief.

Because of the severe penalty for attempted murder and the ambiguity often involved in its proof, our supreme court has singled out attempted murder for special treatment. *Hopkins v. State,* 759 N.E.2d 633, 637 (Ind.2001) (citing *Richeson v. State,* 704 N.E.2d 1008 (Ind.1998)). The claim that a trial court improperly provided a jury instruction on the *mens rea* for attempted murder has been called a "*Spradlin* claim." In *Spradlin v. State,* 569 N.E.2d 948, 950 (Ind.1991), the court held that a conviction for attempted murder requires that the State prove the specific intent to kill. *Spradlin* was later extended to cases, such as the present one, where the State seeks a conviction for attempted murder as an accomplice. In *Bethel,* 730 N.E.2d at 1246, our supreme court held that the State's burden of proof is as follows:

(1) that the accomplice, acting with the specific intent to kill, took a substantial step toward the commission of murder, and

(2) that the defendant, acting with the specific intent that the killing occur, knowingly or intentionally aided, induced, or caused the accomplice to commit the crime of attempted murder.

Here, the State concedes that the trial court provided the jury with an erroneous jury instruction because it lacked the essential element of Edington's specific intent that the killing occur when he took the steps to aid the principal, Kneller. The State argues that because Edington's intent was not seriously at issue at trial and identity was the central issue there can be no reversible error. *See Swallows v. State,* 674 N.E.2d 1317 (Ind.1996) ("the intent of the perpetrator was not a central issue at trial."); *Majors v. State,* 735 N.E.2d 334, 338 (Ind.Ct.App.2000) (citation omitted).

At trial, the final instruction to the jury on attempted murder was as follows:

1. Andrew Kneller committed the crime of Attempted Murder in that Andrew Kneller:

(a) acting with the specific intent to kill, attempted to kill Roosevelt Patterson by kicking and hitting Patterson, carrying him to a car and trans-

porting him by car where he took a substantial step toward killing Roosevelt Patterson when Kneller doused him with lighter fluid and set him on fire;

and the defendant, Brian Edington,

2. knowingly or intentionally

3. aided Andrew Kneller in committing the crime of Attempted Murder.

*Petitioner–Appellant's Appendix* at 62.

■ There is no dispute that Kneller was the principal actor in beating the victim, dousing him with lighter fluid and wrapping him in a blanket, transporting him to the country, dousing him with lighter fluid again, and setting him on fire. In order to convict Edington of attempted murder as an accomplice, the trial court was required to inform the jury that to find Edington guilty it had to find that he acted with the specific intent for the killing to occur.

In *Williams v. State,* 737 N.E.2d 734, 735 (Ind.2000), our supreme court analyzed an accomplice instruction for attempted murder in a post-conviction review. Citing to the reasoning in *Bethel,* the court found that the jury instruction on the intent necessary for conviction of attempted murder as an accomplice violated the rule of *Spradlin.* The court noted that there had been cases where, despite clear error, the court did not vacate an attempted murder conviction because: (1) the intent of the perpetrator was not a central issue at trial; (2) the instructions as a whole sufficiently suggested the requirement of the intent to kill; or (3) both. The court concluded that such was not the case here and that Williams's intent was seriously disputed at trial. *Id.* at 737. The court held that the post-conviction court erred in denying relief when the jury had not been informed that in order to find Williams guilty as a non-shooting accomplice, it had to find that he "acted with the specific intent to kill the victim." *Id.* at 739.

Most recently, our supreme court applied *Spradlin* reasoning in the direct appeal of a defendant who was found guilty of both attempted murder and attempted murder as an accomplice. *Hopkins v. State,* 759 N.E.2d 633, 637 (Ind.2001). The *Hopkins* court, also citing to *Bethel,* affirmed Hopkins's conviction for attempted murder but reversed his conviction as an accomplice concluding that his intent to kill was squarely at issue given his actions as a non-shooting accomplice and the fact that he was not present at the time the crime occurred. The jury had not been properly instructed of the need to find that, as the accomplice, he possessed the specific intent to kill the victim. *Id.* at 639.

Further, in *Grundy v. State,* 695 N.E.2d 167 (Ind.Ct.App.1998), the defense, as in the present case, was to place identity at issue and to raise a question as to whether Grundy was the person inflicting the near fatal blows to the victim. Yet, the facts of the case and admissions of trial counsel led the court to the conclusion that Grundy's intent was squarely at issue. *Id.* at 170. We stated: "This is not a case where we can say that the specific intent to kill 'cannot be seriously disputed.' We conclude that the failure of the trial court to give a proper jury instruction constitutes fundamental error for which the post-conviction court should have reversed despite Grundy's lack of contemporaneous objection." *Id.*

In the present case, Edington was a non-participant in the most severe portion of the beating by Kneller that lasted over thirty minutes. He was a non-participant in stripping the victim of this clothing, dousing him with lighter fluid, and wrapping him in a blanket. Edington further was a non-participant in the dumping of the body in the county, the further dousing with lighter fluid, and setting fire to the victim. There was conflicting evidence as to whether Edington assisted carrying the

victim to the car or whether Baltis did this. In any event, it is undisputed that Edington entered the car with Kneller, the victim, and Tolson. Yet, he only rode a short distance and exited the car, ostensibly not wanting to be part of what he likely knew was about to happen. Had the jury been properly instructed, a reasonable jury under this evidence could have concluded that Edington did not possess the specific intent to kill. As in *Grundy*, this is not a case where we can say that specific intent to kill cannot be seriously disputed.

Accordingly, it was error for the court to instruct the jury that Edington could be found guilty for knowingly or intentionally aiding Kneller in the attempted murder without also informing the jury of the need to find that when he aided he had the "specific intent to kill." This error could have allowed the jury to convict him of knowingly rather than intentionally aiding Kneller in attempting to kill Patterson without the specific intent to kill. Precedent compels us to find fundamental *Spradlin* error when an *accomplice's* intent to kill is at issue and the jury instructions fail to inform the jury of the need to find the *accomplice had the specific intent to kill* when he took steps to assist the principal.

The evidence as a whole leads unerringly and unmistakably to a conclusion opposite to the post-conviction court's denial of Edington's petition. Therefore, we reverse the post-conviction court, grant Edington's petition for post-conviction relief, and remand to the court for a new trial.[2]

MAY and MATHIAS, JJ., concur.

---

**2.** Edington also raises the issue that the post-conviction court erred by denying his motions to compel transcripts of the opening and closing statements from his jury trial. However, he has established no prejudice and, given our decision today, the issue stands moot.