**Steven BETHEL, Defendant–Appellant,**

**v.**

**STATE of Indiana, Plaintiff–Appellee.**

**No. 71S00–9712–CR–642.**

Supreme Court of Indiana.

June 16, 2000.

Susan K. Carpenter, Public Defender of Indiana, Lorraine L. Rodts, Deputy Public Defender, Indianapolis, Indiana, Attorneys for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, K.C. Norwalk, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

DICKSON, Justice.

The defendant, Steven Bethel, was convicted of two counts of attempted robbery,[1] two counts of robbery,[2] and four counts of attempted murder.[3] He was adjudicated a habitual offender.[4] As imposed, the re-

sulting sentences aggregated to 120 years. In his appeal, the defendant challenges his convictions in Counts III and VIII, two of the four attempted murder convictions, alleging insufficiency of evidence and the erroneous giving of a jury instruction regarding use of a deadly weapon as evidence of intent to kill. In addition, he challenges the habitual offender enhancement, claiming that the trial court erred in not giving a habitual offender phase instruction regarding the jury's role as judge of the law and the facts.

### Sufficiency of Evidence of Attempted Murder

The defendant contends that the evidence is insufficient to support his convictions for the attempted murders of Patrizia Robaska and Charles Flora.[5] He argues that no rational trier of fact could have found beyond a reasonable doubt that the defendant or his companion, Curtis Crenshaw, intended to kill Robaska or Flora or, even if the jury found that Crenshaw intended to kill, that the defendant knowingly or intentionally aided, induced, or caused Crenshaw to attempt either murder.[6]

■ In reviewing a claim of insufficient evidence, we will affirm the conviction unless, considering only the evidence and all reasonable inferences favorable to the judgment, and neither reweighing the evidence nor judging the credibility of the witnesses, we conclude that no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt.

---

1. Ind.Code §§ 35–41–5–1 & 35–42–5–1 (1988).

2. Ind.Code § 35–42–5–1 (1988).

3. Ind.Code §§ 35–41–5–1 & 35–42–1–1 (1988).

4. Ind.Code § 35–50–2–8 (1988).

5. The defendant asserts error as to Count III, charging the attempted murder of Patrizia Robaska, and as to Count VIII, charging the attempted murder of Charles Flora. He does not challenge his convictions in Counts VI and VII, charging the attempted murders of two police officers, Gary Jerzak and Richard

Powers, or in Counts I, II, IV, and V, charging the robberies and attempted robberies.

6. We note initially that the defendant does not intend to raise questions of sufficiency under state law, but seeks application of the sufficiency review articulated in *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). This standard is equivalent to the one we routinely employ in reviewing evidentiary sufficiency. *See Williams v. Duckworth,* 738 F.2d 828, 831 (7th Cir.1984) ("The Indiana Supreme Court applies a standard similar to the one enunciated in *Jackson v. Virginia.*").

*Webster v. State,* 699 N.E.2d 266, 268 (Ind. 1998); *Hodge v. State,* 688 N.E.2d 1246, 1247–48 (Ind.1997).

Applying this standard, we find that the evidence establishes that, on March 5, 1991, the defendant agreed to assist Curtis Crenshaw in obtaining money and that they went to the J & S Dairy Mart in South Bend, Indiana, at approximately 11:20 p.m. Armed with handguns, they approached Robaska and Wrobel, two store employees, as they were closing the store. The defendant held a gun to Robaska's head, Crenshaw grabbed Wrobel, and together they forced the two clerks back into the store. The defendant and Crenshaw tried unsuccessfully to obtain cash from the safe. One of the robbers threatened to shoot Robaska. They also forced Wrobel to empty his pockets, but he had no cash. The defendant and Crenshaw then took the two clerks back outside, told them to lie on the ground behind an ice machine, and began walking away. Robaska and Wrobel got up and observed the defendant and Crenshaw. Describing the ensuing events, Wrobel testified:

> They were about fifteen feet away, and [Crenshaw] turned around, and he pointed the gun at us, and I grabbed Patty [Robaska] and pulled her back down because I knew what comes out of a gun. And we laid there, and we heard a fire.

Record at 623. There was no testimony as to the length of time that elapsed between the time Wrobel and Robaska went back down to the ground and the time the shot was fired.[7] No witnesses testified as to the position of Crenshaw's weapon or the direction it was pointed when fired. There was no injury to either Robaska or Wrobel, nor was there evidence of bullet damage to the ice machine or surrounding area. No bullet was recovered.

Approximately ten minutes later, the defendant and Crenshaw entered the Burger Dairy store in South Bend and found three men inside. They robbed the three at gunpoint, taking cash from the register and a wallet from one of the men. During the robbery, Charles Flora attempted to enter the store, and the defendant pointed a gun at him. Flora ran to his van in the parking lot and called the police from his van. The defendant and Crenshaw came out of the store while Flora was still in the lot. The direct examination of Flora includes the following:

> [Prosecutor] Did—before you were shot at, did you see the people that came out of the store? You said you saw them, right?
>
> [Flora] When they both ran out of the store, they both looked directly at my van.
>
> [Prosecutor] Did you see whether they had anything in their hands?
>
> [Flora] They had a gun in their hand.
>
> [Prosecutor] Both of them?
>
> [Flora] I'm not sure if both of them did. One I know did.
>
> [Prosecutor] Was the gun pointed at you?
>
> [Flora] When they ran out, no.
>
> [Prosecutor] At some point in time, was it?
>
> [Flora] Yes.
>
> [Prosecutor] When was that?
>
> [Flora] They was partly across the drive lot, and they pointed at my van, and I heard two or three shots. I know it was more than one shot.
>
> [Prosecutor] What did you do?
>
> [Flora] Well, I got down in my van and proceeded to go back up onto the lot because I didn't know what to do.

Record at 676–77. Neither Flora nor his van was hit, and no bullets were ever found. Although Flora stated at trial that he did not see and was "not sure" which of the two men shot at him, record at 681, he

---

7. By the time of trial, Robaska had left the State and refused to return to testify. The tape recording of her call to the 911 operator was admitted at trial with no objection. Record at 666–67.

testified that he gave a statement to police within about an hour of the shooting in which he identified Crenshaw as the person who shot at him.[8] As the defendant and Crenshaw attempted to flee, they successively encountered two police officers and fired shots at each officer.

■ As to the convictions for the attempted murders of Robaska[9] and Flora, as noted by the trial court in its sentencing statement, the evidence reflects that the shots were fired by Crenshaw and not by the defendant. To support the convictions for these counts of attempted murder, we must first determine whether the evidence was sufficient to establish that Crenshaw, acting with the intent to kill, took a substantial step toward killing Robaska and Flora. *See McGee v. State,* 699 N.E.2d 264, 265–66 (Ind.1998); *Vance v. State,* 620 N.E.2d 687, 690 (Ind.1993). The intent to kill may be inferred from the deliberate use of a deadly weapon in a manner likely to cause death or serious injury. *Wilson v. State,* 697 N.E.2d 466, 476 (Ind.1998); *McEwen v. State,* 695 N.E.2d 79, 90 (Ind. 1998). We have found sufficient evidence for conviction when the evidence indicates that a weapon was fired in the direction of the victim. *See, e.g., Shelton v. State,* 602 N.E.2d 1017, 1021 (Ind.1992) (defendant pointed handgun at victim and shot him twice from distances of twelve and thirty feet); *Owens v. State,* 544 N.E.2d 1375, 1377 (Ind.1989) (defendants fired in direction of occupied vehicle and shots passed through windshield); *Brumbaugh v. State,* 491 N.E.2d 983, 984 (Ind.1986) (defendant fired shotgun at police helicopter and at officer who reported that shot "whizzed" by his head and landed within twelve feet).

■ Because the record is devoid of any probative evidence that Crenshaw was pointing his firearm at Robaska when he fired the weapon, we are compelled to conclude that Crenshaw's intent to kill Robaska was not established beyond a reasonable doubt. There is no evidence as to the length of time between the moment Crenshaw was seen pointing his weapon at Robaska and the time the shot was heard. During this time, the sole testifying witness, Wrobel, had pulled Robaska to the ground, and the evidence does not permit a reasonable inference that Wrobel was able to observe Crenshaw continuously or that Crenshaw's weapon remained pointed at Robaska during this interval.

In contrast, however, the evidence is sufficient under our standard of review to establish that Crenshaw fired his weapon in the direction of Flora and thus deliberately used a deadly weapon in a manner likely to cause death or serious injury. When Flora attempted to enter the store, the defendant pointed a gun at him. After running to his van, Flora observed Crenshaw point a gun at him and then heard two or three shots. It was after these shots were fired that Flora got down in his van. We find Flora's testimony sufficient for a reasonable jury to infer that Crenshaw fired at and intended to kill Flora.

■ Because we find sufficient evidence of Crenshaw's intent to kill Flora, we must consider the defendant's claim that the evidence was insufficient to prove that he knowingly or intentionally aided, induced, or caused Crenshaw to commit the attempted murder of Flora. The accomplice liability statute permits a defendant to be found guilty as an accomplice without the jury finding that the defendant committed every element of the crime when that defendant "knowingly or intentionally aids, induces, or causes another person to commit an offense." IND.CODE § 35–41–2–4.

---

**8.** As between the defendant and Crenshaw, Flora identified the person who shot at him as "the heavier of the two suspects" and "the heavy set guy." Record at 681, 683. Other trial testimony established that this description identified Crenshaw rather than the defendant.

**9.** The defendant was not charged with the attempted murder of Wrobel.

For many crimes, it is sufficient to prove that a defendant either "knowingly" or "intentionally" performed a prohibited act. It is well settled, however, that a conviction for attempted murder requires proof of specific intent to kill. *See Spradlin v. State,* 569 N.E.2d 948, 950 (Ind.1991). The issue becomes then, what must be proven in order to show that the defendant "knowingly or intentionally" aided the commission of a crime requiring specific intent for conviction?

■ In light of *Spradlin*'s requirement that attempted murder be established by proof of specific intent to kill, we find that, in order to establish that a defendant aided, induced, or caused an accomplice to commit attempted murder, the State must prove that the defendant, with the specific intent that the killing occur, knowingly or intentionally aided, induced, or caused his accomplice to commit the crime of attempted murder. Thus, to convict for the offense of aiding an attempted murder, the State must prove: (1) that the accomplice, acting with the specific intent to kill, took a substantial step toward the commission of murder, and (2) that the defendant, acting with the specific intent that the killing occur, knowingly or intentionally aided, induced, or caused the accomplice to commit the crime of attempted murder.

■ Despite substantial evidence that the defendant was engaged in protracted criminal activity with Crenshaw, with both men carrying guns, threatening several people at gunpoint, and robbing or attempting to rob several people, we find the evidence insufficient to prove that the defendant had the specific intent to kill Flora or the specific intent that Crenshaw kill Flora.

Accordingly, we find the evidence insufficient to prove the defendant's conviction in Count III, the attempted murder of Robaska, and in Count VIII, the attempted murder of Flora.

### Giving Instruction on Use of Deadly Weapon

■ The defendant next contends that the trial court erred in giving an instruction permitting the jury to infer intent to commit murder from the use of a deadly weapon in a manner likely to cause death or great bodily injury. The defendant did not, however, object to this instruction at trial and, therefore, may not raise this claim on appeal. Ind. Trial Rule 51(C). *See also Scisney v. State,* 701 N.E.2d 847, 848 (Ind.1998). Although procedural default may be avoided if we find a claimed error to be fundamental, we find no error here, fundamental or otherwise.

### Failing to Instruct on Jury's Right to Determine Law

■ The defendant seeks retrial as to his habitual offender enhancement on the ground that, although the trial court instructed the jury in its preliminary and guilt phase final instructions that the jury has the right to determine the law and the facts, the court failed to give this instruction during the habitual offender phase. The defendant, however, did not tender such an instruction or otherwise request that it be given, and thus he may not assert on appeal the failure to instruct the jury on this matter. *Clark v. State,* 561 N.E.2d 759, 764 (Ind.1990). This is not fundamental error. *Seay v. State,* 698 N.E.2d 732, 737 (Ind.1998). We decline the defendant's request to revisit *Seay* on this point.

### Conclusion

We affirm the convictions and sentences on Counts I, II, IV, V, VI, and VII, and the habitual offender determination charged in Count IX. We reverse and vacate the convictions on Counts III and VIII. Because of the manner in which the trial court imposed concurring and consecutive sentences, the reversal of Counts III and VIII operates to decrease the defendant's total sentence by eighteen years. We affirm the remaining 102–year aggre-

gate sentence.[10]

SHEPARD, C.J., and SULLIVAN, BOEHM, and RUCKER, JJ., concur.

10. The trial court imposed concurrent sentences of sixteen years each for Counts I and II and of twenty-five years for Count III. It imposed concurrent sentences of sixteen years each for Counts IV and V and of twenty-five years for Count VIII. For Count VI, it imposed a sentence of forty years enhanced by thirty years for the habitual offender finding, to be served concurrently with a sentence of forty years for Count VII. The sentences for Counts IV and V were ordered to be served consecutive to the sentences for Counts I, II, and III, and the sentences for Counts VI and VII are to be consecutive to the sentences for Counts I through V.

The trial court's sentencing order directed that the sentences for Count VI and Count VII were to run consecutive to Count I through Count V, without mentioning whether sentences for Count VI and Count VII were to run consecutive to Count VIII also. Record at 214–15. The trial court's abstract of judgment directed that the sentences for Count VI and Count VII were to run consecutive to Count IV and Count V, without mentioning Count VIII. Record at 217. It is therefore possible to construe the aggregate sentence to be either 120 or 111 years. The trial court statement to the defendant at the conclusion of the sentencing hearing indicated that the court intended the sentences for Count VI and Count VII to run consecutive to all other counts. Record at 254–55. Both the defendant and the State understood that the defendant was sentenced to 120 years. Amended Brief of Defendant–Appellant at 4; Brief of Appellee at 4. We need not resolve the ambiguity caused by the sentence on Count VIII in light of our resolution of the defendant's claims.

We note that, in designating the sentence for application of the thirty-year habitual offender enhancement, the trial court's sentencing order stated that "the sentence as to Count IV, the Attempted Murder of Gary Jerzak, is further enhanced by an additional term of thirty (30) years." Record at 215. This is a scrivener's error. Count VI, charging the attempted murder of Gary Jerzak, not Count IV, charging robbery, received the habitual offender enhancement. The trial court's intention to apply the habitual offender enhancement to Count VI rather than Count IV is demonstrated by the Abstract of Judgment, record at 217, and the defendant's acknowledgment that a sentence of seventy years was imposed on Count VI, Amended Brief of Defendant–Appellant at 1, 4.