Lawrence **COWHERD**, Appellant–
Petitioner,

v.

**STATE of Indiana**, Appellee–
Respondent.

No. 49A02–0212–PC–1059.

Court of Appeals of Indiana.

July 17, 2003.

Susan K. Carpenter, Public Defender of Indiana, C. Brent Martin, Deputy Public Defender, Indianapolis, IN, Attorneys for Appellant.

Steve Carter, Attorney General of Indiana, Cynthia L. Ploughe, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

SHARPNACK, Judge.

Lawrence Cowherd appeals the post-conviction court's denial of his petition for post-conviction relief. Cowherd raises two issues, which we restate as:

I. Whether the trial court committed fundamental error when it instructed the jury regarding accomplice liability for attempted murder; and

II. Whether Cowherd received effective assistance of trial counsel.

We affirm.

The relevant facts, as set forth in our memorandum opinion in Cowherd's direct appeal, follow. *See Cowherd v. State*, No. 49A05–9612–CR–523, 696 N.E.2d 894 (Ind. Ct.App. May 12, 1998), *trans. denied.*

Cowherd began dating Katina Maffett in January of 1995. In February of 1995, Cowherd hit Maffett with a hairbrush. In June of 1995, Cowherd hit Maffett in the nose so hard that she became unconscious. Maffett moved into an apartment with Cowherd in July of 1995. In or about July of 1995, Cowherd hit Maffett in the face with his fist, and in October of 1995 Cowherd cut off Maffett's braided hair with a box-cutter. Maffett broke up with Cowherd at the end of October of 1995.

On November 7, 1995, Cowherd went to Maffett's house. They argued and Cowherd told Maffett that the two of them "were going to die together." Maffett's mother, Nina Howard, drove by and saw Maffett and Cowherd fighting on the sidewalk. Maffett got into Howard's car. Cowherd also entered the car, saying that he just wanted to talk with Maffett. Howard eventually persuaded Cowherd to leave the car, but he stood in front of the car and then climbed up on the hood of the car to prevent her from driving away. Cowherd finally let the car pass.

Later that day, Maffett went to her job at the Shell Station at 46th and Shadeland where she worked the 10:00 p.m. to 6:00 a.m. shift as a cashier. During her shift, the sale floor was locked, requiring customers to make payments at the cashier's window and to pass payments through a sliding drawer. J'Cetta Davis, Jason Jackson, and Tyrone Boykin were all inside the station with Maffett. Cowherd called Maffett repeatedly at work that night, but Maffett repeatedly hung up on him.

Cowherd came to the Shell Station three times, the last time returning shortly after midnight with Carlester

Tapp and Brunis Beecher. Cowherd looked at Maffett through the window. When J'Cetta Davis reached for the telephone Cowherd said, "Bitch, you wanna call the police." Cowherd moved his right hand toward his pants, and immediately after that there was gunfire. Eight shots were fired into the station. Police officers pursued Cowherd, who fled the officers until his car hit a tree. Cowherd ran from the car after it crashed, and was apprehended by a police officer on foot. The police recovered a .32 caliber Taurus-brand revolver that was thrown from the vehicle while Cowherd was driving away from the police, and they also recovered a .22 caliber automatic pistol from the floorboard of Cowherd's car. Both .32 and .22 caliber bullet fragments and cartridges were recovered from the Shell station.

*Id.* at 3–4. On direct appeal, we also considered the following facts:

All four of the witnesses in the station testified that they saw Cowherd and another man, Beecher, outside the cashier's window immediately prior to the shooting. Davis testified that she attempted to call the police as Cowherd and Beecher approached the window, and when Cowherd saw her pick up the phone, he said, "Bitch, you wanna call the police." Immediately after that Davis and Boykin saw Cowherd move his right hand toward his pants, and thereafter they immediately heard gunshots. Jackson saw Beecher fire a gun into the station after which Jackson immediately took cover. Five police officers testified that after the shooting,

Cowherd drove himself and Beecher from the scene, and sped away from the officers after they had turned on their pursuit lights. Officer Tolliver testified that he saw Cowherd throw a gun out of the car window during the pursuit. After Cowherd crashed the automobile, he attempted to escape on foot, but was apprehended by Officer Starks. Officer Gorgol testified that he recovered the gun thrown from the car and another gun from inside the car, which the Indianapolis Marion County Forensic Services Agency determined were the weapons which had been used to fire the shots into the Shell station.

*Id.* at 5–6.

A jury found Cowherd guilty of four counts of attempted murder as class A felonies,[1] one count of resisting law enforcement as a class A misdemeanor,[2] and one count of carrying a handgun without a license as a class A misdemeanor.[3] The trial court sentenced Cowherd to fifty years of imprisonment for each of the four attempted murder convictions, one year for the resisting law enforcement conviction, and one year for the handgun conviction. The trial court ordered that two of the attempted murder sentences be served consecutive to each other, but the remaining sentences be served concurrently. Consequently, the trial court sentenced Cowherd to an aggregate sentence of one hundred years.

On direct appeal, Cowherd argued, in part, that the evidence was insufficient to sustain his convictions for attempted murder.[4] We held that "[t]here was ample

---

1. Ind.Code §§ 35–41–5–1 (1995) & 35–42–1–1 (1995) (subsequently amended by Pub.L. No. 261–1997, § 3, and Pub.L. No. 17–2001, § 15 & 31).

2. Ind.Code § 35–44–3–3 (1995) (subsequently amended by Pub.L. No. 13–1998, §§ 1 & 2).

3. Ind.Code § 35–47–2–1 (1995).

4. Cowherd also argued that the trial court erred by admitting four prior acts of violence by Cowherd against Maffett. However, we disagreed and held that the trial court did not

evidence to support the jury's inference that Cowherd fired the gun at Maffett." *Id.* at 6. Additionally, we held that, even if Cowherd did not fire a weapon, the jury could have found Cowherd guilty of attempted murder as an accomplice. *Id.* Cowherd also argued that the trial court did not properly instruct the jury regarding the elements of attempted murder.[5] Specifically, Cowherd argued that the attempted murder instruction given by the trial court amounted to fundamental error because "knowingly" was included as an element of the offense. *Id.* at 9. We held that no fundamental error occurred because the jury was specifically informed that it needed to find "specific intent to kill." *Id.* at 10. We affirmed Cowherd's convictions, and our supreme court denied transfer.

On August 1, 2001, Cowherd filed an amended petition for post-conviction relief alleging that: (1) Cowherd was erroneously sentenced in violation of Ind.Code § 35–50–1–2; (2) the trial court committed fundamental error when it instructed the jury regarding the specific intent required to convict Cowherd of attempted murder as an accomplice; and (3) Cowherd's trial counsel was ineffective for failing to raise both issues. The post-conviction court granted the petition with respect to the sentencing issue and revised Cowherd's sentence to a total of fifty-five years.

The post-conviction court denied the petition with respect to the fundamental error issue and ineffective assistance of counsel issue. With respect to the fundamental error issue, the post-conviction court held that Cowherd had waived the alleged jury instruction error pursuant to *Sanders v. State*, 765 N.E.2d 591 (Ind. 2002), by failing to raise the issue on direct appeal. With respect to the ineffective assistance of counsel issue, the post-conviction court held that: (1) Cowherd's trial counsel was not deficient because "attempted murder jurisprudence when [Cowherd] was tried did not require a special jury instruction regarding accomplice liability;" and (2) Cowherd was not prejudiced by his trial counsel's failure to tender such an instruction because he was charged as a principal in the crime and we held on direct appeal that the evidence was sufficient to sustain his conviction as a principal. Appellant's Appendix at 97.

Before discussing Cowherd's allegation of error, we note the general standard under which we review a post-conviction court's denial of a petition for post-conviction relief. Post-conviction procedures do not afford petitioners an opportunity for a "super appeal." *Matheney v. State*, 688 N.E.2d 883, 890 (Ind.1997), *reh'g denied, cert. denied*, 525 U.S. 1148, 119 S.Ct. 1046, 143 L.Ed.2d 53 (1999). Rather, they create a narrow remedy for subsequent collateral challenges to convictions.

---

err by admitting the prior acts of violence by Cowherd against Maffett. Lastly, Cowherd argued that the trial court failed to properly instruct the jury regarding the use of circumstantial evidence. We held that because the State's case did not rest solely upon circumstantial evidence, "there was no error in not instructing the jury that the State must exclude every reasonable hypothesis of innocence." *Cowherd*, slip op. at 11.

**5.** The trial court instructed that jury that:

to convict a defendant of attempted murder, under Counts I, II, III, or IV, the State must prove each of the following elements:
1. A defendant
2. knowingly or intentionally
3. with specific intent to kill
4. engaged in conduct
5. which was a substantial step toward the commission of the crime of Murder which is to knowingly or intentionally kill another human being.

*Cowherd*, slip op. at 9.

*Id.* Those collateral challenges must be based upon grounds enumerated in the post-conviction rules. *Id.; see also* Ind. Post–Conviction Rule 1(1). Petitioners bear the burden of establishing their grounds for relief by a preponderance of the evidence. *Matheney,* 688 N.E.2d at 890; *see also* P–C.R. 1(5). When petitioners appeal from an adverse judgment, they appeal a negative judgment. *Miller v. State,* 702 N.E.2d 1053, 1058 (Ind.1998), *reh'g denied, cert. denied,* 528 U.S. 1083, 120 S.Ct. 806, 145 L.Ed.2d 679 (2000). Therefore, on appeal, a petitioner must show that the evidence, when taken as a whole, "leads unerringly and unmistakably to a conclusion opposite to that reached by the [post-conviction] court." *Matheney,* 688 N.E.2d at 890–891. We will disturb the post-conviction court's decision only if the evidence is without conflict and leads to but one conclusion and the post-conviction court has reached the opposite conclusion. *Emerson v. State,* 695 N.E.2d 912, 915 (Ind.1998), *reh'g denied.*

## I.

■ The first issue is whether the trial court committed fundamental error when it instructed the jury regarding accomplice liability for attempted murder. Cowherd argues that fundamental error occurred when the trial court failed to instruct the jury that, to be convicted of attempted murder as an accomplice, Cowherd had to be "acting with the specific intent that the killing occur." *See Bethel v. State,* 730 N.E.2d 1242, 1246 (Ind.2000) (holding that "to convict for the offense of aiding an attempted murder, the State must prove: (1) that the accomplice, acting with the specific intent to kill, took a substantial step toward the commission of murder, and (2) that the defendant, acting with the specific intent that the killing occur, knowingly or intentionally aided, induced, or caused the accomplice to commit the crime

of attempted murder"). Specifically, Cowherd challenges Instructions 15A and 15B. Instruction 15A provided that:

> A person who knowingly or intentionally aids, induces, or causes another person to commit an offense, commits that offense and is subject to the same penalties as the person he knowingly or intentionally aided, induced or caused to commit the offense.

Appellant's Appendix at 115. Instruction 15B provided that:

> In order to be held responsible for the actions of another, a person need only have knowledge that he is helping in the commission of a crime. He does not have to personally participate in the crime.

*Id.* at 115.

Cowherd argues, and the State does not dispute, that the accomplice liability instructions were erroneous because they failed to instruct the jury that it had to find that Cowherd, "acting with the specific intent that the killing occur, knowingly or intentionally aided, induced, or caused the accomplice to commit the crime of attempted murder." *See Hopkins v. State,* 759 N.E.2d 633, 637–638 (Ind.2001) (holding, in a direct appeal, that the accomplice liability instructions that failed to instruct the jury regarding specific intent required of a defendant to establish accomplice liability for attempted murder were fundamental error). However, the State argues that Cowherd waived review of his claim of fundamental error. We agree.

Our supreme court has held that it is "wrong to review [a] fundamental error claim in a post-conviction proceeding." *Sanders,* 765 N.E.2d at 592. Rather, in "post-conviction proceedings, complaints that something went awry at trial are generally cognizable only when they show deprivation of the right to effective counsel

or issues demonstrably unavailable at the time of trial or direct appeal." *Id.; see also Canaan v. State,* 683 N.E.2d 227, 235–236 n. 6 (Ind.1997) (holding that the availability of the fundamental error exception as an exception to the waiver rule in postconviction proceedings is generally limited to "deprivation of the Sixth Amendment right to effective assistance of counsel, or ... an issue demonstrably unavailable to the petitioner at the time of his [or her] trial and direct appeal"), *reh'g denied, cert. denied,* 524 U.S. 906, 118 S.Ct. 2064, 141 L.Ed.2d 141 (1998).

Cowherd counters that this issue was unavailable at the time of his trial and direct appeal because the law in this matter had not yet been decided. To support this argument, Cowherd relies upon *Bethel,* which our supreme court decided in 2000. *See Bethel,* 730 N.E.2d 1242. However, in *Williams v. State,* 737 N.E.2d 734, 740–741 n. 16 (Ind.2000), our supreme court held that:

> *Bethel* did not announce a new rule of criminal procedure but rather explained what the State was already required to prove to gain a conviction for attempted murder under a complicity theory or otherwise: '[T]he same specific intent to

kill must be shown for an attempted murder as for the crime of murder.'

(quoting *Zickefoose v. State,* 270 Ind. 618, 620, 388 N.E.2d 507, 509 (1979)); *see also Williams,* 737 N.E.2d at 740 ("[A]s *Bethel* reinforces, the requirements of *Spradlin* equally apply to those on trial for attempted murder and for aiding an attempted murder.") (emphasis added). Thus, *Bethel* did not announce new law and the issue was available at the time of Cowherd's trial and direct appeal.[6] *Cf. Woodson v. State,* 767 N.E.2d 1022, 1025 (Ind.Ct.App. 2002) (holding that the defendant's claim of fundamental error in the attempted murder accomplice liability instruction was not available at the time of his trial or direct appeal because *Bethel* and its progeny were yet to be decided at that time), *reaffirmed on reh'g,* 778 N.E.2d 475 (Ind.Ct. App.2002). Consequently, Cowherd has waived review of his fundamental error argument as a freestanding claim. *See, e.g., Sanders,* 765 N.E.2d at 592. Rather, we address Cowherd's claim regarding the attempted murder as an accomplice jury instructions only as the claim relates to his ineffective assistance of trial counsel argument.

---

**6.** We acknowledge that our supreme court also noted in *Williams* that:

> Earlier this year—after the Court of Appeals's decision in this case—we explained *for the first time* how *Spradlin* applies to persons "convict[ed] for the offense of aiding an attempted murder."

737 N.E.2d at 738 (emphasis added) (citing *Bethel v. State,* 730 N.E.2d 1242, 1246 (Ind. 2000)). Further, in *Williams,* although the attempted murder was committed in 1991, pre-*Bethel,* our supreme court held on postconviction relief that the trial court committed fundamental error in instructing the jury regarding the mens rea of accomplice liability for attempted murder. Thus, internal inconsistencies exist within *Williams* as to whether this issue was available before *Bethel.* However, even if we err by finding

that this jurisprudence was available at the time of Cowherd's trial and direct appeal, the issue reappears in the context of whether Cowherd received ineffective assistance of counsel. Our supreme court has held that "[e]stablishing a claim of fundamental error requires a showing of at least as much prejudice to the defendant as a claim of ineffective assistance of counsel. As such, a finding that Defendant was not denied the effective assistance of counsel also establishes that the alleged error was not so prejudicial as to constitute fundamental error." *Culver v. State,* 727 N.E.2d 1062, 1070 (Ind.2000), *reh'g denied.* Thus, because we determine in Part II of this opinion that Cowherd was not denied the effective assistance of counsel, any alleged error regarding the instruction would not constitute fundamental error.

## II.

The next issue is whether Cowherd received effective assistance of trial counsel. To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate both that his counsel's performance was deficient and that the petitioner was prejudiced by the deficient performance. *Ben–Yisrayl v. State*, 729 N.E.2d 102, 106 (Ind.2000) (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984), *reh'g denied*), *reh'g denied*, *cert. denied*, 534 U.S. 830, 122 S.Ct. 73, 151 L.Ed.2d 38 (2001). We presume that counsel's performance was effective. *Id.* For a petitioner to demonstrate that his counsel's performance was deficient, he must show that the representation fell below an objective standard of reasonableness. *Id.* We give great deference to counsel's strategic decisions and review the totality of counsel's representation to determine whether the performance was inadequate. *Taylor v. State*, 717 N.E.2d 90, 94–95 (Ind.1999).

However, we need not determine whether counsel's performance was deficient if we can more readily determine that the petitioner did not suffer prejudice as a result of the alleged deficiencies. *Cooper v. State*, 687 N.E.2d 350, 353–354 (Ind. 1997) (citing *Strickland*, 466 U.S. at 697, 104 S.Ct. at 2069). For a petitioner to demonstrate that he was prejudiced by his counsel's alleged errors, the petitioner must prove that "there is a reasonable probability that the result of the proceeding would have been different but for defense counsel's inadequate representation."

*Ben–Yisrayl,* 729 N.E.2d at 106. Here, we need not determine whether Cowherd's trial counsel's performance was deficient because, even assuming a deficiency, Cowherd has failed to prove that there is a reasonable probability of a different outcome but for his trial counsel's performance.[7]

Cowherd argues that the outcome would have been different if the jury had been properly instructed regarding the intent necessary for an attempted murder conviction under the theory of accomplice liability. Cowherd relies, in part, upon our supreme court's grant of a petition for post-conviction relief in *Williams v. State*, 737 N.E.2d 734 (Ind.2000). There, the defendant was convicted of attempted murder as an accomplice when a passenger in his vehicle shot another driver. *Id.* at 735. A jury convicted the defendant of attempted murder. *Id.* at 736. On direct appeal, the defendant made a *Spradlin* claim, alleging that the trial court committed fundamental error in instructing the jury regarding the intent necessary for attempted murder. *Id.* We affirmed the conviction, and our supreme court denied transfer. *Id.* The defendant then filed a petition for post-conviction relief, which the post-conviction court denied. *Id.* On appeal, this court acknowledged that it had been incorrect to deny the defendant's *Spradlin* claim on direct appeal, but "it nevertheless held that [the defendant] was not entitled to relief because, as an accomplice, [the defendant's] 'intent was not an issue,' ... and so the *Spradlin* rule was not implicated." *Id.*

---

7. Although we need not address whether Cowherd's trial counsel's performance was deficient, we note an inconsistency in the State's argument on this issue. When addressing the fundamental error issue, the State argues that the accomplice liability for attempted murder instruction issue was available at the time of Cowherd's trial and direct appeal. Then, when discussing whether Cowherd's counsel was deficient, the State argues that "[c]ounsel can not be deemed ineffective for failing to foresee a shift in the law that would not come until much later." Appellee's Brief at 14. We find these inconsistent positions on the issue unpersuasive.

Our supreme court granted transfer and agreed that the denial of the defendant's *Spradlin* claim on direct appeal was incorrect because the attempted murder instruction misinformed the jury as to the appropriate mens rea. However, our supreme court held that:

We do not revisit these previous rulings as to fundamental error for improperly instructing the jury on the elements of attempted murder and the Court of Appeals's application of the doctrine of res judicata to them. Instead, we address Williams's continuing argument—made in both his direct and post-conviction appeals—that the jury instructions failed "to address the legal issue of accomplice liability in an attempted murder prosecution," and Court of Appeals holding on this issue that "Williams' intent was not an issue because he was convicted as an accomplice."

*Id.* at 738 (footnote and citation omitted). The court then addressed the accomplice liability instructions for attempted murder and found those instructions also lacking the appropriate mens rea. *Id.* at 738–739.

Consequently, our supreme court held that the jury was "misinformed in two critical respects, the combination of which unacceptably lessened the State's burden of proof." *Id.* at 739. First, the jury was misinformed as to the appropriate mens rea of attempted murder. *Id.* Second, the jury "was never instructed that it had to find that Williams, as a *non-shooting ac-*

*complice,* acted with the specific intent to kill the victim." *Id.* (emphasis in original). Thus, "the instructions as a whole never informed the jury that either the backseat principal or [the defendant] had to possess the specific intent to kill the victim." *Id.* Our supreme court held that "the trial court committed fundamental error in not instructing the jury that it had to find that [the defendant] possessed the specific intent to kill when he knowingly or intentionally aided, induced, or caused his backseat accomplice to commit the crime of attempted murder." *Id.* at 740.

Although our supreme court concluded that Williams did not receive a fair trial due to the combination of erroneous jury instructions for attempted murder and accomplice liability for attempted murder, we find this case distinguishable for two reasons. First, the jury instruction for attempted murder here was not erroneous. On direct appeal, we held that although the attempted murder instruction included "knowingly" as an element of the offense, the instruction also told the jury that "specific intent to kill" was an element of attempted murder. *Cowherd,* slip op. at 9. Consequently, we held that "the jury was properly instructed that it must find specific intent to kill in order to find the defendant guilty."[8] *Id.* at 10.

More importantly, we find *Williams* distinguishable because the defendant in *Williams* was convicted of attempted murder as an accomplice. Here, the evidence

---

**8.** Similarly, in *Ramsey v. State,* our supreme court held that although the trial court should not have included the word "knowingly" in an attempted murder instruction, no fundamental error was established because:

despite the instruction's defects, the trial court enumerated 'specific intent to kill' among the elements that the State was required to prove beyond a reasonable doubt. Second, the trial court read the jury the charging information which contains the

proper mens rea. Because the correct mens rea was enumerated both as an element in the charging instrument and as an element that the State was required to prove beyond a reasonable doubt, we believe that the jury instructions, taken as a whole, sufficiently informed the jury of the State's burden of proving that the Defendant specifically intended to kill the victim.
723 N.E.2d 869, 872–873 (Ind.2000) (footnote omitted).

demonstrated that Cowherd was a principal, not an accomplice to the shootings.[9] In Cowherd's direct appeal, we noted that Cowherd told Maffett that they "were going to die together." *Id.* at 3. Later that day, Cowherd repeatedly came to the gas station where Maffett was working. The third time he came to the gas station, Cowherd and Beecher approached the gas station. Davis reached for the telephone to call 911, and Cowherd said, "Bitch, you wanna call the police." *Id.* at 4. Cowherd then moved his hand toward his pants, and the shooting began. Eight shots were fired into the gas station where the four people were located. The police recovered two guns, a .32 caliber weapon and a .22 caliber weapon, from Cowherd and the two other men after they fled the scene. Bullet fragments and cartridges from both weapons were recovered at the scene of the shooting. In the direct appeal, we held that the evidence was sufficient to sustain Cowherd's convictions for attempted murder as a principal.

Even if the jury had been properly instructed regarding accomplice liability for attempted murder, there does not exist a reasonable probability that the outcome of the trial would have been different because: (1) the evidence was sufficient to convict Cowherd of attempted murder as a principal; and (2) the jury was properly instructed regarding the elements of attempted murder. Consequently, Cowherd has failed to demonstrate that he was prejudiced by the allegedly deficient performance of his trial counsel. The post-conviction court did not err by denying Cowherd's claim of ineffective assistance of counsel. *See, e.g., Robinson v. State,* 775 N.E.2d 316, 319 (Ind.2002) (holding that the defendant was not denied the effective assistance of counsel where no reasonable possibility existed that the supplemental instruction affected the jury's verdict).

For the foregoing reasons, we affirm the post-conviction court's denial of Cowherd's petition for post-conviction relief.

Affirmed.

BARNES, J. and RILEY, J., concur.

---

**9.** Cowherd also argues, without any citation to support from the record, that he "had to have been convicted under an accomplice liability theory for some of the charges" and argues that without clear proof of which charges intended Cowherd to be a principal and which intended him to be an accomplice, all four convictions must be vacated. Appellant's Reply Brief at 5; *see also* Appellant's Brief at 6–7. Cowherd essentially challenges our previous holding that the evidence is sufficient to sustain his convictions for attempted murder as a principal. However, that determination is res judicata. *See Williams,* 737 N.E.2d at 739 (holding that a decision on direct appeal that jury instructions were not fundamental error was res judicata).