**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

APPELLANT PRO SE:

**THOMAS CURTIS EDMOND**
Pendleton, Indiana

ATTORNEYS FOR APPELLEE

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KARL M. SCHARNBERG**
Deputy Attorney General
Indianapolis, Indiana

**FILED**

Apr 17 2014, 10:26 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| THOMAS CURTIS EDMOND, | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No.  45A03-1303-PC-90 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE LAKE SUPERIOR COURT
The Honorable Salvador Vasquez, Judge
Cause No. 45G01-9912-CF-229

**April 17, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**ROBB, Judge**

## Case Summary and Issues

Thomas Edmond, pro se, appeals the post-conviction court's denial of his petition for post-conviction relief, raising the following issues for our review: (1) whether Edmond received ineffective assistance of trial counsel; and (2) whether Edmond received ineffective assistance of appellate counsel. Concluding the post-conviction court did not err in denying Edmond's petition, we affirm.

## Facts and Procedural History

Many of the facts surrounding Edmond's convictions were recounted by this court in Edmond's direct appeal:

> Edgar Davis was a steel mill worker. Sometime in the summer or fall of 1999, he opened a neighborhood bar and lounge in Hammond, Indiana: Mr. D's. Davis established, and posted, rules concerning patronage of the bar. Included in these rules was a prohibition against entering the bar with a drink, even if one had purchased it at Mr. D's earlier in the evening, left with it, and returned. Davis employed his son, Tyrone, to work at the door in order to enforce the rule prohibiting entry (or re-entry) with a drink.
>
> Sometime in November of that year, the defendant, Thomas Curtis Edmond, came to Mr. D's for the first time. When he left the establishment and returned with a drink, Tyrone Davis denied him reentry unless and until he finished his drink. Edmond ignored Tyrone, entered Mr. D's and sat at the bar. Mr. Davis and Tyrone confronted Edmond who pushed Mr. Davis. Davis drew a weapon and called the police. The police removed Edmond who left proclaiming that the bar was "raggedy" and he would "come back and shoot it up." Mr. Davis barred Edmond from returning to Mr. D's in the future.
>
> In the month that followed, the defendant repeatedly returned to the bar, apologizing and asking to be admitted. Ultimately, Mr. Davis accepted Edmond's apology but still declined to admit him[.]
>
> On December 19, 1999, at approximately 2:30 a.m., Edmond and two friends came to the bar, again apologizing, again asking to be admitted. Tyrone and Edgar repeatedly told Edmond to leave. When he refused to go, Edgar struck

2

him with his hand and then with a gun. A fight began. Tyrone Davis pushed Edmond's friends out the door and pulled Edmond into the bar. Then, the Davis[es] began beating Edmond. They pushed him out the door some five minutes after the fighting began. According to Tyrone, Edmond came back in the bar fifteen to twenty seconds later and shot first Edgar and then Tyrone Davis. After shooting Tyrone, Edmond continued to shoot [Edgar]. Witness Neamon Walton, who was standing in a doorway of Mr. D's when the shooting started, testified that the "Edmond boy" reached around him in the doorway and started shooting. Edgar Davis died as a result of the gunshot wounds.

Edmond v. State, 790 N.E.2d 141, 143-44 (Ind. Ct. App. 2003) (citations omitted), trans. denied. Edmond was charged with murder, attempted murder, and battery with a deadly weapon, a Class C felony. Following a jury trial, Edmond was convicted of voluntary manslaughter as a lesser included offense of murder; attempted murder; and battery. He received an aggregate sentence of sixty years in the Indiana Department of Correction.

Edmond appealed, and his appellate counsel filed a Davis petition to stay the direct appeal in order to hold a hearing for post-conviction relief. The post-conviction court denied Edmond's petition, and that ruling was affirmed by this court on June 17, 2003. Id. at 146.

In October 2007, Edmond, pro se, petitioned this court for permission to file a successive petition for post-conviction relief. Edmond's petition was granted in January 2008. A post-conviction relief hearing was held on March 19, 2009, and Edmond argued he received ineffective assistance from both his trial counsel and appellate counsel. The court issued an order denying Edmond's successive petition for post-conviction relief on February 15, 2013. Edmond now appeals the denial of his petition. Additional facts will be supplied as necessary.

## Discussion and Decision

### I.       Standard of Review

A petitioner seeking post-conviction relief bears the burden of establishing grounds for relief by a preponderance of the evidence. Ind. Post-Conviction Rule 1(5). A petitioner who is denied post-conviction relief appeals from a negative judgment, which may be reversed only if "the evidence as a whole leads unerringly and unmistakably to a decision opposite that reached by the post-conviction court." Stevens v. State, 770 N.E.2d 739, 745 (Ind. 2002), cert. denied, 540 U.S. 830 (2003). We defer to the post-conviction court's factual findings, unless they are clearly erroneous. Id. at 746.

The Sixth Amendment's "right to counsel is the right to the effective assistance of counsel." Strickland v. Washington, 466 U.S. 668, 686 (1984) (quoting McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970)). To establish a claim of ineffective assistance of counsel, a convicted defendant must show (1) that counsel's performance was deficient such that it fell below an objective standard of reasonableness based on prevailing professional norms and (2) the defendant was prejudiced by counsel's deficient performance. Id. at 687. When considering whether counsel's performance was deficient, the reviewing court begins with a "strong presumption" that counsel's performance was reasonable. Id. at 689. A defendant is prejudiced if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.

4

The two prongs of the Strickland test—performance and prejudice—are independent inquiries, and both prongs need not be addressed if the defendant makes an insufficient showing as to one of them. Id. at 697. For instance, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed" without consideration of whether counsel's performance was deficient. Id.

## II. Ineffective Assistance of Counsel

On appeal, Edmond raises claims of ineffective assistance by both his trial counsel and appellate counsel, based on a number of alleged deficiencies. We will address each of Edmond's arguments below.

## A. Trial Counsel

Edmond's arguments regarding trial counsel revolve around three separate jury instructions given at his trial. Edmond contends his trial counsel was ineffective for failing to object to those instructions.

### 1. Final Instruction 17: Accomplice Liability Instruction

First, Edmond argues he received ineffective assistance because his trial counsel failed to object to Final Jury Instruction 17, which dealt with the law of accomplice liability. Instruction 17 provided:

> It is a fundamental principle of law that where two or more persons engage in the commission of an unlawful act, each person is criminally responsible for the actions of each other person which were a probable and natural consequence of their common plan, even though not intended as part of the original plan. Under these circumstances, it is not essential that participation of any one person to each element of the crime be established.

5

Under Indiana law, a person who knowingly or intentionally aids, induces, or causes another person to commit an offense commits that offense, even if the other person 1) has not been prosecuted for the offense; 2) has not been convicted of the offense; or 3) has been acquitted of the offense.

To aid under the law is to knowingly aid, support, help or assist in the commission of a crime. Mere presence at the scene of the crime and knowledge that a crime is being committed are not sufficient to allow an inference of participation. It is being present at the time and place and knowingly doing some act to render aid to the actual perpetrator of the crime. The presence of a person at the scene of the commission of a crime and companionship with another person engaged in the commission of the crime and a course of conduct before and after the offense are circumstances which may be considered in determining whether such person aided and abetted the commission of such crime.

Appellant's App. at 162 (quotation marks omitted).

To convict a defendant of the crime of attempted murder, the State has the burden of proving the defendant had the specific intent to kill, and it is not enough that a defendant act "knowingly or intentionally." Spradlin v. State, 569 N.E.2d 948, 950-51 (Ind. 1991). Jury instructions must conform to this requirement. Id.

In Bethel v. State, 730 N.E.2d 1242, 1246 (Ind. 2000), our supreme court set down a similar requirement where a case involves the issue of accomplice liability:

to convict for the offense of aiding an attempted murder, the State must prove: (1) that the accomplice, acting with the specific intent to kill, took a substantial step toward the commission of murder, and (2) that the defendant, acting with the specific intent that the killing occur, knowingly or intentionally aided, induced, or caused the accomplice to commit the crime of attempted murder.

Language regarding specific intent was not included in Instruction 17, and it is on this ground that Edmond alleges error. Indeed, the Indiana Supreme Court has found occasion to conclude such error may constitute fundamental error. See, e.g., Williams v. State, 737

6

N.E.2d 734, 740-41 (Ind. 2000). It is Edmond's position that the jury may have concluded he was guilty of attempted murder under a theory of accomplice liability without a proper instruction regarding specific intent as required by Bethel.

An identical argument under similar facts was made in Cowherd v. State, 791 N.E.2d 833 (Ind. Ct. App. 2003), trans. denied. In Cowherd, Cowherd and another man walked into a gas station where Cowherd's ex-girlfriend worked. When Cowherd approached his ex-girlfriend at the register, another employee reached for the phone, and Cowherd said "Bitch, you wanna call the police." Id. at 835. Cowherd moved his right hand toward his pants, and there was gunfire immediately after. Police pursued Cowherd and recovered a pistol Cowherd threw from his car while attempting to flee. Cowherd was convicted of attempted murder. In his petition for post-conviction relief, Cowherd relied on Williams, arguing an accomplice liability instruction given at trial did not properly state the specific intent requirement for attempted murder. However, we distinguished Cowherd's case from Williams on two grounds: "(1) the evidence was sufficient to convict Cowherd of attempted murder as a principal; and (2) the jury was properly instructed regarding the elements of attempted murder." Id. at 841. For those reasons, we held Cowherd was not prejudiced by his counsel's failure to object to the accomplice liability instruction. Id. We reach the same conclusion in this case. Although an objection to Instruction 17 may have been sustained, we do not believe there is a reasonable probability the outcome of Edmond's trial would have been different had such an objection been made. Thus, we conclude Edmond was not prejudiced by his counsel's failure to object to the instruction.

7

The trial record indicates that Frederick Edmond, Edmond's brother, supplied Edmond with the gun. During the instruction conference, the State indicated it wanted Instruction 17 to assuage jury concerns as to why Frederick Edmond was not also on trial and to inform the jury "whether or not to consider at least whether [other persons] have been charged, convicted, whatever." Trial Transcript at 905. This is confirmed by the State's only mention of the accomplice liability instruction during closing arguments; referencing Instruction 17, the State informed the jury that it was not to consider whether Frederick Edmond had been prosecuted and that "this is only the trial of this defendant." Id. at 963.

Unlike Bethel and Williams, which each involved facts where the defendants were acting as an accomplice and the State pursued convictions on that basis, the State's case against Edmond was strictly based upon the theory that Edmond was the shooter. The evidence presented against Edmond was more than sufficient to obtain a conviction for attempted murder, including two eyewitnesses who identified Edmond as the shooter and another witness who testified to seeing Edmond with a gun immediately after the shooting. Further, the jury was properly instructed regarding the elements of attempted murder.[1] And importantly, Edmond's brief does not point to any fact in the record or provide argument that Edmond could have plausibly been convicted under a theory of accomplice liability, rather than as the shooter. Under the circumstances of this case, we conclude Edmond has not demonstrated he was prejudiced by his counsel's failure to object to Instruction 17.

---

[1] The trial court gave three instructions regarding attempted murder, all of which correctly referenced the proper specific intent requirement. Final Instruction 12 contained language quoted verbatim from our

8

## 2. Final Instruction 27: Prior Identification Instruction

Next, Edmond asserts his trial counsel was ineffective for failing to object to Final Jury Instruction 27. Instruction 27 read: "A statement of identification of a person made shortly after perceiving the person, although now recanted, may be considered as substantive evidence." Appellant's App. at 172. Edmond believes an objection was appropriate because the instruction focused the jury's attention on certain evidence, presented a legal issue irrelevant to the jury's function, and misled the jury by using the word "substantive."

At trial, the State called Naemon Walton as a witness against Edmond. Walton testified he was inside the bar on the night of the shooting. When asked whether he saw the person who perpetrated the shooting, Walton said "not really." Tr. at 357. The State then confronted Walton with a pretrial statement made to police in which he identified Edmond as the shooter. Edmond's counsel objected, but the trial court overruled the objection and allowed the State to impeach Walton. The trial court admonished the jury, saying the statement to police was to be considered only for impeachment purposes and that Walton's trial testimony was substantive evidence. Eventually, Walton clarified that he indeed identified Edmond as the shooter by his hair, clothes, and side of his face, but Walton did not see Edmond from the front. During the instruction conference, the State tendered a version of Instruction 27, arguing that prior identifications may be considered substantive evidence and that the trial court's admonishment was improper. The trial court agreed, and Instruction 27 was given.

---

supreme court's decision in <u>Spradlin</u>, <u>supra</u>.

First, Edmond asserts "Instruction 27 was an incorrect statement of law and should not have been given by the court." Brief of Appellant at 10. Edmond is mistaken. At the time of trial, Indiana Evidence Rule 801(d)(1)(C) provided "[a] statement is not hearsay if . . . [t]he declarant testifies at the trial . . . and is subject to cross-examination concerning the statement, and the statement is . . . one of identification of a person made shortly after perceiving the person . . . ." Instruction 27 is merely a restatement of Rule 801(d)(1)(C) and thus is a correct statement of the law. Moreover, the instruction was necessary to cure an incorrect admonishment previously given by the trial court. Trial counsel did not perform deficiently by not objecting to Instruction 27. See Jackson v. State, 683 N.E.2d 560, 563 (Ind. 1997) (stating counsel does not perform deficiently for failing to object at trial unless an objection would have been successful).

Edmond's remaining arguments against Instruction 27 are without merit. The instruction did not unfairly highlight Walton's prior statements over his trial testimony. This is primarily because Walton's prior statement and trial testimony were substantially similar, in that he identified Edmond as the shooter in both instances. Edmond claims the instruction was irrelevant to the jury's function as fact finder, but in reality, the instruction aided the jury in its function by clarifying that the prior statement could be considered as substantive evidence and not merely as impeachment. Lastly, we do not believe the jury was unduly confused by the term "substantive," where the trial court distinguished between impeachment and substantive evidence in its admonishment to the jury and in other jury instructions preceding Instruction 27.

10

3.     Final Instruction 23:  Jury's Determination of Witness Credibility

Third, Edmond argues he received ineffective assistance because his trial counsel failed to object to Final Jury Instruction 23, which pertained to the jury's ability to determine witness credibility.  Instruction 23 provided in pertinent part:

> You should attempt to fit the evidence to the presumption that the defendant is innocent and the theory that every witness is telling the truth.  You should not disregard the testimony of any witness without a reason and without careful consideration.  However, if you find that the testimony of a witness is so unreasonable as to be unworthy of belief, or <u>if you find so much conflict between the testimony of the witnesses that you cannot believe all of them, then you must determine which of the witnesses you will believe and which of them you will disbelieve</u>.

Appellant's App. at 168 (emphasis added).  Edmonds contends this instruction impermissibly created a false dichotomy whereby the jury "must" believe one witness and disbelieve the other when two witnesses offer conflicting testimony.  We disagree.

Edmond relies on <u>Gantt v. State</u>, 825 N.E.2d 874 (Ind. Ct. App. 2005).  In <u>Gantt</u>, conflicting testimony was given at trial, and during the jury's deliberations, the jury sent a question to the trial court asking whether the jury was required to believe one witness or the other.  The trial court gave a lengthy explanation, which essentially informed the jury they must choose to believe one witness over another.  This court held the trial court's explanation was an incorrect statement of law that invaded the province of the jury to determine witness credibility and accept or reject evidence freely.  <u>Id.</u> at 878.  The court said:

> When two witnesses give contradictory accounts, it is not true that the jury <u>must</u> believe one or the other. The jury may choose to believe neither witness, believe aspects of the testimony of each, or believe the testimony but also believe in a different interpretation of the facts than that espoused by the witnesses, among other possibilities.

11

Id. (emphasis in original).

Unlike the situation in Gantt, Instruction 23 does not require the jury to believe all of one witness's testimony at the expense of ignoring the conflicting testimony. The language of Instruction 23 allows the jury to freely choose to believe neither witness or to believe portions of multiple witnesses' testimony.

As the State points out, the language Edmond complains of is identical to language contained in the current pattern jury instruction on judging witness credibility. See Indiana Pattern Jury Instructions (Criminal) 13.11 (3d ed. 2014) ("If you find conflicting testimony, you must determine which of the witnesses you will believe and which of them you will disbelieve."). Our supreme court has implicitly approved the pattern instruction, see Sweany v. State, 607 N.E.2d 387, 389 (Ind. 1993), and we believe Instruction 23 accurately explained the law. Contrary to Edmond's assertions, the language of Instruction 23 does not invade the province of the jury to make credibility determinations. Edmond's trial counsel was not deficient for declining to object to Instruction 23.

## B.  Appellate Counsel

Edmond also argues his appellate counsel rendered ineffective assistance in two ways: (1) appellate counsel failed to raise the arguments of ineffective assistance of trial counsel that Edmond now raises in his petition for post-conviction relief; and (2) appellate counsel failed to argue the admission of an unavailable witness's deposition at trial violated the Confrontation Clause.

### 1. Failure to Argue Ineffective Assistance on Direct Appeal

First, Edmond asserts his appellate counsel was ineffective for failing to raise the issue of ineffective assistance of trial counsel on direct appeal. Specifically, Edmond believes his appellate counsel was deficient for failing to make the same arguments he now makes in his successive petition for post-conviction relief. We have already discussed each of Edmond's claims of ineffective assistance of trial counsel and concluded he is not entitled to relief on any of those bases. We have no reason to believe the court would have ruled differently had Edmond's appellate counsel presented these arguments of ineffective assistance on direct appeal. Therefore, no prejudice can be shown.

### 2. Admission of Deposition

Last, Edmond alleges his appellate counsel was deficient for failing to argue the trial court erred by admitting a deposition in lieu of live testimony at trial in violation of Edmond's right to confront witnesses against him. The deposition Edmond complains of was that of Terrence Williams, who was deceased at the time of trial.

At the time of Edmond's trial, deposition testimony was admissible in lieu of in-court testimony where (1) the witness was unavailable and (2) the statement to be used bore sufficient "indicia of reliability." Freeman v. State, 541 N.E.2d 533, 537 (Ind. 1989) (citing Ohio v. Roberts, 448 U.S. 56, 65 (1980)).[2] First, there is no question Williams was an unavailable witness at the time of trial. See Ind. Evidence Rule 804(a)(4) (2000)

---

[2] The Confrontation Clause jurisprudence has changed since Edmond's trial, and the "indicia of reliability" test from Ohio v. Roberts has been abrogated. See generally Crawford v. Washington, 541 U.S. 36 (2004).

("'Unavailability as a witness' includes situations in which the declarant . . . is unable to be present or to testify at the hearing because of death . . . ."). As to whether the deposition had sufficient "indicia of reliability," that requirement was also met. The requirement was usually established where the defendant had an opportunity to cross-examine the witness. Freeman, 541 N.E.2d at 537. Testimony taken by defense counsel in which he questions a declarant completely and comprehensively would comport with the principal purposes of cross-examination and satisfy the reliability requirement. Ingram v. State, 547 N.E.2d 823, 826-27 (Ind. 1989). Here, Edmond's counsel was present at Williams's deposition and cross-examined Williams, satisfying the reliability requirement under Ohio v. Roberts. Therefore, the admission of the Williams deposition at trial did not violate Edmond's right to confrontation, and his appellate counsel was not deficient for declining to raise the issue on appeal.[3]

## Conclusion

Concluding the post-conviction court's denial of Edmond's petition for post-conviction relief was proper, we affirm.

Affirmed.

**BARNES, J., and BROWN, J., concur.**

---

[3] We also note Edmond's brief spends several pages discussing the Confrontation Clause as it was applied at the time of his trial, but Edmond's brief gives no indication as to what facts were presented by the deposition testimony or how the admission of the deposition would not be considered harmless error. Simply stated, in addition to his failure to show appellate counsel performed deficiently, Edmond has also failed to make any showing that he was prejudiced by appellate counsel's decision not to appeal admission of the Williams deposition.