Artie THOMAS, Appellant
(Defendant below),

v.

STATE of Indiana, Appellee
(Plaintiff below).

No. 18S00–0009–CR–536.

Supreme Court of Indiana.

Aug. 27, 2002.

Hilary Bowe Ricks, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Nandita G. Shepherd, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

SULLIVAN, Justice.

Defendant Artie Thomas was convicted of murder, conspiracy to commit murder, and criminal recklessness. He and his accomplices shot into a crowded house, killing one person and wounding three others. We affirm his conviction, finding that the trial court's response to a jury question during deliberations was harmless error.

### Background

The facts most favorable to the judgment indicate the following. On the night of October 30, 1999, a local chapter of Kappa Alpha Psi Fraternity held a fundraiser at a local YWCA. After the fundraiser, there was a party at the house of a few of the fraternity members ("Kappa house"). Defendant and seven or eight of his friends went to the Kappa house, but were turned away at the door. They were told that the party was full and it was only for Kappa members. Defendant and his friends exchanged words with the Kappas and finally left the party. Upon leaving, Defendant said, "we'll be back and you better have the police here."

As the group left the party they split up into separate groups. Defendant said he was "going to the hood to get his [gun]." (R. at 929.) One of Defendant's friends, Terrence Manley, said, "I ain't go to do nothing but go down the street." (R. at 929.) Another member of the group, Tyrone Mason, took Louis Abrams to get Abrams's gun.

The group met up again in the parking lot of a store near the Kappa house. Defendant, Michael Bruno, Abrams, and Manley had guns. The group parked their cars on a dark residential street so as not to be seen. They walked toward the back of the Kappa house. At some point, someone said, "let's do this shit," and Defendant, Manley, Bruno, and Abrams began shooting into the house. Four people were shot. One victim, Julian Brown, died and three other women were injured.

The State charged Defendant with three counts of criminal recklessness resulting in serious bodily injury, a class C felony,[1] Conspiracy to Commit Murder, a class A felony,[2] and Murder.[3] The jury found Defendant guilty on all counts. The trial court sentenced Defendant to consecutive sentences of eight years for each criminal recklessness count and sixty years for the murder. The court imposed the sentence for conspiracy to commit murder concurrent to the other counts for a total sentence of 84 years of incarceration.

### Discussion

Defendant contends that the trial court abused its discretion in responding to a jury question. During closing argument, the prosecutor read—without objection from the defense—a portion of an Indiana Supreme Court opinion, *Jones v. State*, 689 N.E.2d 722 (Ind.1997):

---

1. Indiana Code § 35–42–2–2(c)(1) (1999).

2. Id. §§ 35–41–5–2 and 35–42–1–1.

3. Id. § 35–42–1–1.

I want to also read you a little Indiana law. This is a Supreme Court case from Indiana; *Jones v. State* of Indiana, Supreme Court of Indiana, decided December 17, 1997 and in this case the Indiana Supreme Court said: 'To convict Jones of murder the prosecution must prove and the jury must find that the defendant knowingly or intentionally killed another human being.' That's what we have charged the defendant. And they cite the Indiana Code. 'When the victim's fatal injuries are inflicted by a weapon the trier of the fact,' which is the jury, 'may infer intent to kill from the intentional use of that weapon in a manner likely to cause death or serious bodily injury.' . . . Here, talking about the Jones case, the evidence indicates that Jones fired at least four shots in rapid succession from a .9 millimeter handgun into the open door of a home in which fifteen to twenty people were socializing. Sound familiar? 'It was clearly reasonable for the jury to conclude that Jones used the handgun, undoubtedly a deadly weapon, in a manner likely to cause death or serious injury, and thus that he acted with the requisite intent.'

(R. at 1709–1710.)

After the jury had retired for deliberation, the jury sent the trial court judge a note that read: "The Jury would like to have access to the precedents of Indiana Law which was read in court regarding a case in the Supreme Court Re: a person knowingly shooting into a house with 15 or so people in it." (R. at 196.) Over Defendant's objection, the judge called the jury to the courtroom and re-read the portion of *Jones* that had been previously read to the jury by the prosecutor during closing argument:

This is a Supreme Court case, the name of the case is *Jones v. State* of Indiana, it is December 17, 1997, decided by the Supreme Court of Indiana, Chief Justice Shepard writing it for the Court. 'To convict Jones of murder, the prosecution must prove, and the jury must find that the defendant knowingly or intentionally killed another human being. . . . When the victim's fatal injuries are inflicted by a deadly weapon, the trier of fact may infer intent to kill from the intentional use of that weapon in a manner likely to cause death or serious bodily injury. . . . Here the evidence indicates that Jones fired at least four shots in rapid succession from a nine millimeter handgun into the open door of a home in which fifteen to twenty people were socializing. It was clearly reasonable for the jury to conclude that Jones used the handgun, undoubtedly a deadly weapon, in a manner likely to cause death or serious injury, and thus that he acted with the requisite intent. Additional proof of intent is not required.' That concludes the portion, ladies and gentlemen.

(R. at 1745–1746.)

▇▇▇ Indiana Code § 34–36–1–6 [4] addresses how a trial court is to proceed when the jury requests information during its deliberation:

If, after the jury retires for deliberation; (1) there is a disagreement among the jurors as to any part of the testimony; or (2) the jury desires to be informed as to any point of law arising in the case; the jury may request the officer to conduct them into court, where the information required shall be given in the presence of, or after notice to, the parties or the attorneys representing the parties.

"[T]his statutory provision does not mandate that the trial court provide informa-

---

4.  Indiana Code § 34–36–1–6 is a 1998 recodi-       fication of § 34–1–21–6.

tion automatically and mechanically every time the jury requests it. . . ." *Foster v. State*, 698 N.E.2d 1166, 1170 (Ind.1998). Rather, it entrusts to the trial court the discretion to determine whether the jury's inquiry reflects that (1) there is a disagreement among the jurors as to any part of the testimony; or (2) the jury desires to be informed as to any point of law arising in the case. Ind.Code § 34–36–1–6; *Foster*, at 1170. If the trial court determines that a question falls into one of these two categories, then the trial court must supply the requested information, "to the extent that it consists of properly admitted testimony or documentary evidence." *Id.* at 1170 (citing *Johnson v. State*, 518 N.E.2d 1073, 1078 (Ind.1988)).

■ Here, the jury requested that the trial court re-read the portion of the prosecution's closing argument that referred to *Johnson*. Neither party contends that this inquiry reflected any disagreement within the jury. On the other hand, at first blush it appears, and the trial court found, that the jury's question involved a point of law. But it was not a point of law within the meaning of the statute and the trial court abused its discretion by responding to the jury's inquiry in the way that it did.

■ There are many points of law on which it is simply inappropriate for a trial court to instruct a jury. *See Hernandez v. State*, 761 N.E.2d 845, 848 (Ind.2002) (citing examples). And we have regularly held that the mere fact that language has been used in an appellate opinion does not make it appropriate for a jury instruction. *See Dunlop v. State*, 724 N.E.2d 592, 595

(Ind.2000) (citing cases). While the prosecutor's argument here was of his view of what the law in this situation was, it was still argument. *Cf. Saylor v. State*, 765 N.E.2d 535, 551 n. 7 (Ind.2002) (arguments of counsel are not evidence), *petition for rehearing pending; Poirier v. A.P. Green Servs., Inc.*, 754 N.E.2d 1007, 1011 (Ind. App.2001) (same). What the trial court did was to read to the jury not the law but one of the parties' arguments.[5] This was error.

Historically, this Court took the position that once jury deliberations commence, the trial court should not give any additional instructions. *Bailey v. State*, 669 N.E.2d 972, 975–76 (Ind.1996); *Lewis v. State*, 424 N.E.2d 107, 111 (Ind.1981). We have recently changed our rules in this regard, allowing trial courts to "facilitate and assist jurors in the deliberative process . . . in order to avoid mistrials." Ind. Jury Rule 28 (eff. January 1, 2003); *Tincher v. Davidson*, 762 N.E.2d 1221, 1224 (Ind. 2002). But for the court itself to read from one party's closing argument in response to a jury inquiry goes well beyond the latitude granted by Jury Rule 28 and *Tincher v. Davidson*.[6]

■ We will not overturn a defendant's conviction if a trial court's error was harmless. Ind. Trial Rule 61. Harmless error is defined as an error that does not "affect the substantial rights of a party." *Fleener v. State*, 656 N.E.2d 1140, 1141 (Ind.1995). Though the trial court's communication to the jury was error, we find it harmless under the circumstances of this case. Any prejudice Defendant suffered was due to the reading from *Johnson*, which the jury

---

5. Because the trial court noted that the opinion read from was authored by Chief Justice Shepard, the argument undoubtedly gained particular force in the judge's re-reading.

6. *Tincher* indicates that a trial court could permit "counsel to briefly address the jury's question in short supplemental arguments to the jury." *Tincher*, 762 N.E.2d at 1224. We think a similar solution would have been appropriate in this case.

had already heard once (without objection from Defendant). The fact that this information was cumulative of information already received diminishes its prejudicial effect.

In addition, there was overwhelming evidence of Defendant's guilt. The evidence showed that when Defendant and his friends were turned away at the party he stated, "we'll be back and you better have the police here." (R. at 926–27.)

Mason also testified that Defendant stated that he was "going in the hood to get his [gun]." (R. at 929.) In addition, Mason, Jerriel Williams, and Abrams testified that they, along with Defendant, returned to the Kappa house. Williams and Abrams testified that Defendant said "What's up" or "What's up dawg" to a person standing at the back door of the Kappa house. When the person at the back door closed the door, someone said, "Let's do this." Moments later, shots were fired into the house. Williams and Abrams testified that they knew they were about to shoot into a house that was full of people. Williams testified that just before he heard gunshots, he saw Defendant reach for something in his pants. Mason testified that a few minutes after the shooting, Abrams told him that Defendant was shooting a "Tech 9."

Another witness, DeJuan McPhal, testified that Danny Hoskins told him that Defendant had a "tech." McPhal further testified that Defendant, Mike Booty, Manley and Abrams were all shooting into the house. In his testimony, McPhal described Defendant's gun as being "like an uzi." Mason testified that Defendant later told him that they got rid of the guns.

We conclude that the fact that the jury had previously heard the language from the *Johnson* opinion in combination with the overwhelming evidence of Defendant's guilt renders the trial court's error harmless.

### Conclusion

The Defendant's convictions and sentence are affirmed.

SHEPARD, C.J., and BOEHM and RUCKER, JJ., concur.

DICKSON, J., concurs in result.