Charles Edward GANTT, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 71A03–0410–CR–486.

Court of Appeals of Indiana.

April 19, 2005.

Anthony V. Luber, South Bend, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Ryan D. Johanningsmeier, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

KIRSCH, Chief Judge.

Charles Edward Gantt appeals his conviction following a jury trial for child molesting[1] as a Class A felony, raising the following issue for review: whether the trial court erred in responding to a question from the jury after it had begun its deliberations.

We reverse.

## FACTS AND PROCEDURAL HISTORY

The facts most favorable to the verdict are that Gantt molested his nine-year-old step-daughter, C.G., when he babysat her one evening while her mother was at work. C.G. told her sister, who told their mother, who called police. Gantt was arrested and charged with child molesting.

At the trial, both C.G. and Gantt testified about the evening in question. C.G. testified that the molestation occurred, while Gantt testified that it did not. After deliberating for less than two hours, the jury sent a note asking about a detail in C.G.'s testimony, inquiring whether that detail was corroborated by the police report, and requesting a copy of the police report. The trial court conferred with counsel, then addressed the jury, explaining that it could not provide the police report. The trial court further explained that it could not reread trial testimony because it did not know if there was a disagreement among the jurors. The trial court then sent the jury back to deliberate further about whether they had a disagreement. The court then called the jury back and reread part of the testimony of C.G. and the investigating officer. About five hours later, the jury sent the court a second note that stated: "There is disagreement as to whether you must believe one witness or the other. Can you reach a verdict if you don't believe either party?" *Transcript* at 520. The trial court had an extended consultation with counsel about the meaning of the question, then brought the jury back and asked it to clarify the note. The trial court asked the jury if the note referred to a single juror or the jury as a group. One juror answered that the question referred to the jury as a whole; however, another juror then suggested that a single juror's opinion was at issue. The trial court then instructed the jury at length, over Gantt's counsel's objection, regarding its duty to determine whom to believe. Approximately one hour later, the jury returned a guilty verdict, and the trial court entered sentence and conviction accordingly.

## DISCUSSION AND DECISION

Gantt contends that the trial court erred in its response to the jury's note.

1. *See* IC 35–42–4–3.

IC 34–36–1–6 governs the procedure for responding to jury questions. It provides that if, after the jury retires for deliberation there is a disagreement among the jurors as to any part of the testimony or the jury desires to be informed as to any point of law arising in the case, the trial court must give the information required in the presence of, or after notice to, the parties or the attorneys representing the parties. In *Bouye v. State*, 699 N.E.2d 620 (Ind.1998), our supreme court held that this statutory mandate applies only in those cases in which the jury explicitly indicates a disagreement. *Id.* at 627–28. By contrast, when no disagreement is indicated, the trial court may exercise discretion in determining whether certain questions of the jury should be answered. *Wray v. State*, 720 N.E.2d 1185, 1190 (Ind. Ct.App.1999), *trans. denied* (2000). In this case, because the jury note explicitly referred to a disagreement among its members, the trial court was required to answer the jury's question after notice to the parties. The court first notified the parties and their respective counsel of the jury's question and then discussed with them the appropriate manner in which to deal with the situation. Once the court made that decision, the jury was called into court and read the additional instructions. Thus, the trial court properly conformed its procedure to the dictates of IC 34–36–1–6. We next turn to the substance of the court's response.

■ Historically, our supreme court took the position that once jury deliberations commence, the trial court should not give any additional instructions. *Thomas v. State*, 774 N.E.2d 33, 36 (Ind.2002). The court has recently changed the rules in this regard, allowing trial courts to assist jurors in their deliberations to avoid mistrials. *Id.* Prior to the adoption of Indiana's new jury rules, the generally

accepted procedure in answering a jury's question on a matter of law was to reread all of the instructions in order to avoid emphasizing any particular point and not to qualify, modify, or explain its instructions in any way. *Massey v. State*, 803 N.E.2d 1133, 1137 (Ind.Ct.App.2004). Under the new jury rules, however, trial courts are afforded greater flexibility in responding to jury inquiries. *Id.* Indiana Jury Rule 28 provides:

> If the jury advises the court that it has reached an impasse in its deliberations, the court may, but only in the presence of counsel, and, in a criminal case the parties, inquire of the jurors to determine whether and how the court and counsel can assist them in their deliberative process. After receiving the jurors' response, if any, the court, after consultation with counsel, may direct that further proceedings occur as appropriate.

Part of the impetus in adopting the new jury rules was to allow a trial court to facilitate and assist jurors in the deliberative process. *Massey*, 803 N.E.2d at 1137. Our supreme court explained:

> [O]ur new Indiana Jury Rule 28 urges that trial judges facilitate and assist jurors in the deliberative process, in order to avoid mistrials. Under appropriate circumstances, and with advance consultation with the parties and an opportunity to voice objections, a trial court may, for example, directly seek further information or clarification from the jury regarding its concerns, may directly answer the jury's question (either with or without directing the jury to reread the other instructions), may allow counsel to briefly address the jury's question in short supplemental arguments to the jury, or may employ other approaches or a combination thereof.

*Tincher v. Davidson,* 762 N.E.2d 1221, 1224 (Ind.2002) (citations and footnote omitted).

In *Massey,* 803 N.E.2d at 1137, the trial court received a number of inquiries from the jury that indicated that the jurors were confused about potentially lesser-included offenses. It consulted with counsel in the defendant's presence about how the trial court proposed to resolve the jurors' confusion and decided it would be best to reread the instructions in their entirety and to add a new instruction on how to apply the verdict forms for the lesser-included offenses. We found no error in this procedure, explaining that the giving of additional instructions is consistent with the underlying goal of the new jury rules. *Id.*

Likewise, here, it was not inappropriate to give an additional instruction to resolve the jury's apparent confusion regarding its function. This course is consistent with the new rules. That said, we must now determine whether the instruction was erroneous.

■■■ Instructing the jury lies within the sole discretion of the trial court. *Id.* Jury instructions are to be considered as a whole and in reference to each other. *Id.* An error in a particular instruction will not result in reversal unless the entire jury charge misleads the jury as to the law in the case. *Id.* Before a defendant is entitled to a reversal, he or she must affirmatively show that the erroneous instruction prejudiced his substantial rights. *Id.*

Here, the trial court gave an extended explanation of its interpretation of the jury's duty to determine the credibility of conflicting witnesses, including rereading one of its final instructions. The trial court instructed the jury that "you must decide who you believe and who you disbelieve if you can't believe two or more." *Transcript* at 539. It stated "a thing can-

not both be and not be at the same time. They contradict each other. It either is or it isn't." *Id.* at 540. It then began a lengthy explanation of its understanding of this principle:

But if I opened that door and the guy had ten dollars in his hand, and another guy was standing there, and the other guy that didn't have the ten dollars said that guy just took my ten dollars, and the other guy said what are you talking about, it was my ten dollars, I can't—I cannot disbelieve both of them. They both can't be right. Somebody is not right.

If you are in a situation where it can't be susceptible of misperception or ambiguity, then you're in a situation where you have this sentence where two or more—so much conflict in the testimony of two or more witnesses that you cannot believe each of them, then you must decide who you believe and who you disbelieve.

Got it? Now, I have to tell you that if anybody hears testimony and says I acknowledge that somebody isn't telling the truth, but I just can't make up my mind who I believe, what is that person saying? That person is not telling you anything about the quality of making a judgment about those people. That person is telling you that that person cannot follow what this instruction says the person has to do.

You took an oath to follow the law, to follow the instructions. Now, if anybody feels that they recognize that it's a situation where somebody or another—one or the other, there's conflict in testimony and both cannot be believed, but the person is saying but I can't decide which one I believe. The person is really saying something about themselves vis-a-vis with respect to the evidence. It's not necessarily a criticism of the evidence if

the person is saying I'm not in a position to do what this tells me. That is a very different kind of question. That's a question of—you see, the jury—everybody on the jury took an oath to follow the law. And the law says—everything it said but it includes that sentence.

So the answer to the question if we mean one or more people—where there's a disagreement as to whether one or more people must believe one witness or the other, and it's for you to decide if this case has a situation where you have a situation where there can't be ambiguity—there is not ambiguity or misinterpretation of something like we have an identification or bank robbers or something. If we don't have that, if we have a situation where there is no ambiguity and there is contradictory testimony, and then the principle of noncontradiction is it can't be one way and the other way. It has to be one way or the other.

And if everybody agrees that they are in that situation where they must conclude who they believe and who they don't believe, I can't answer for any individual or individuals except to say nobody should reach a verdict that is contrary to their conclusion. If they can't conclude, they can't come to anything. But you took an oath to follow the law.

I guess what I'm saying is that instruction as I understand it does not contemplate that the jury member or members can—it says it. It says you must—if you find so much conflict between the testimony of two or more witnesses that you cannot believe each of them, then you must decide. You must decide which witnesses you will believe and which you will disbelieve.

So the answer to your question is you must.

*Id.* at 541–44. Gantt's counsel objected to the court's instruction, arguing that it amounted to an impermissible mandatory instruction. The trial court agreed that the instruction was mandatory, explaining, "I have told this jury that they are mandated to resolve a conflict if it's a real conflict and not one of appearance and ambiguity. And I think that's what the instruction says." *Id.* at 548.

■ Indiana Constitution Art. 1, Sec. 19 states: "In all criminal cases whatever, the jury shall have the right to determine the law and the facts." In keeping with this duty, the jury is free to accept or reject any evidence. *Hall v. State*, 560 N.E.2d 561, 563 (Ind.Ct.App.1990). In fact, "[i]t is the unique province of the jury to weigh trial testimony and to assess witness credibility." *Morrison v. State*, 609 N.E.2d 1155, 1159 (Ind.Ct.App.1993). Our supreme court has explained that the court has no right to invade the province of the jury as the sole judge of the credibility of a witness. *Pritchard v. State*, 248 Ind. 566, 570, 230 N.E.2d 416, 418 (1967).

■ We find that the trial court's instruction was an erroneous statement of the law and invaded the province of the jury to determine credibility and accept or reject evidence as it sees fit. When two witnesses give contradictory accounts, it is not true that the jury *must* believe one or the other. The jury may choose to believe neither witness, believe aspects of the testimony of each, or believe the testimony but also believe in a different interpretation of the facts than that espoused by the witnesses, among other possibilities. The trial court's instructions may have led the jury to believe that it was required to adopt wholesale one witness's account over another's. This is an incorrect statement of the law. In light of our conclusion that the trial court's instruction was erroneous,

we must next determine whether the error was harmless.

██ We will not overturn a defendant's conviction if a trial court's error was harmless. *Thomas*, 774 N.E.2d at 36 (citing Ind. Trial Rule 61). Harmless error is an error that does not affect the substantial rights of a party. *Id.*

In this case, the evidence consisted primarily of the two accounts of the evening by C.G. and by Gantt. The jury's focus in deliberations was necessarily the credibility of these two witnesses. Under the circumstances, we cannot conclude that the trial court's erroneous instruction was harmless. Therefore, we must reverse and remand for a new trial.

Reversed.

NAJAM, J., and VAIDIK, J., concur.