## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jan 21 2016, 8:52 am

*Kevin S. Smith*

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Kimberly A. Jackson
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Jesse R. Drum
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Rodger Wilson, Jr.,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

January 21, 2016

Court of Appeals Case No.
28A05-1507-CR-931

Appeal from the Greene Circuit
Court.
The Honorable Erik C. Allen, Judge.
Cause No. 28C01-1408-FC-22

**Friedlander, Senior Judge**

[1] Rodger Wilson, Jr. appeals from his conviction of one count of Class C felony reckless homicide,[1] contending that the evidence is insufficient. We affirm.

[2] Early on April 30, 2014, Wilson's wife, Leah, picked up a prescription for one-milligram Alprazolam tablets from Linton Family Pharmacy. Alprazolam is an anti-anxiety medication commonly known as Xanax, which induces sedation and drowsiness, slows bodily processes, including motor skills and cognitive function, and is capable of causing slurred speech or delayed responsiveness. Although it is prescribed for oral ingestion, it can be ground up and inhaled, causing the medication to reach the blood and brain more quickly. The Wilsons went to Julie Johnson's house in Bloomfield where the Wilsons ground up and each inhaled approximately three Alprazolam pills. The Wilsons left the house in a white 2006 Ford F-150 with Wilson behind the wheel.

[3] For approximately one year, Kyle Sorrenson had commuted to Bloomington from Elnora five or six days a week. During those trips he traveled on Indiana State Road 54 through Bloomfield to Indiana State Road 45, which leads directly into Bloomington. On April 30, 2014, he and his girlfriend left Elnora at approximately 11:00 a.m.

---

[1] Ind. Code § 35-42-1-5 (1980) (West, Westlaw current with all 2015 Public Laws of the 2015 First Regular Session Of the 119th General Assembly).

[4]     As Sorrenson was leaving Bloomfield traveling east on 54, Wilson's vehicle caught up to his and began tailgating him. Sorrenson observed that as Wilson continued to tailgate him, Wilson was continuously on or over the center line. Sorrenson described seeing that Wilson "would dangerously go left of center" with "at least half of the truck . . . in the other lane and then basically his truck would float over and he would come back." Tr. pp. 145-46. According to Sorrenson, this behavior continued until Wilson's vehicle passed his on a straightaway on 54. Once Wilson's vehicle passed, however, the vehicle continued to ride on or over the center line until the vehicle was no longer in sight. Sorrenson had never observed such erratic driving behavior during his prior commutes.

[5]     Eventually, Sorrenson stopped behind Wilson at a stoplight. When the light turned green, both vehicles made a left turn. Sorrenson observed that Wilson was on the center line or over the line almost immediately after the turn. Near a gas station, at least half of Wilson's truck was left of center and almost struck a red truck head on. Sorrenson believed that Wilson's truck was going to collide with the other truck, but observed Wilson's truck float back over into the correct lane. In response to that near collision, Sorrenson slowed his vehicle to create distance between his and Wilson's vehicle.

[6]     Meanwhile, long-time motorcycle enthusiast, Bob Cramer, was riding his Honda Gold Wing motorcycle. About two minutes up the road, at a curve in 45, Wilson's truck collided with Cramer's motorcycle. Cramer had been driving southbound in the southbound lane, while Wilson was driving

northbound in the southbound lane. The collision took place in the middle of the southbound lane, approximately six feet away from the double yellow line. According to an accident reconstructionist, Wilson did not brake before the crash, which sent Cramer and his motorcycle into a ditch, killing him.

[7] Witnesses at the scene described Wilson's speech as slow and somewhat slurred while his movements were almost in slow motion. Wilson refused medical treatment, field sobriety tests, and a blood draw, claiming that he was "not under the privilege of anything." Defendant's Exhibit A.

[8] Detective James O'Malley of the Greene County Sheriff's Department responded to the scene of the accident and after speaking with Wilson, believed that he was under the influence of something. He obtained a search warrant for a blood draw which was executed in the Greene County Jail. Wilson's blood tested positive for Alprazolam at a concentration of 54.8 nanograms per milliliter. According to forensic toxicologist Kevin Shanks, the therapeutic range of Alprazolam is from ten to forty nanograms per milliliter.

[9] The State charged Wilson with Class C felony reckless homicide. The jury found Wilson guilty as charged, and the trial court sentenced Wilson to seven years, with one year suspended to probation.

[10] Wilson appeals claiming the evidence is insufficient to support his conviction. Wilson argues that the State failed to prove beyond a reasonable doubt the following: 1) that Wilson ingested Alprazolam on the day of the collision; 2) a causal link between the collision and Wilson's ingestion of prescription

medication; 3) driving under the influence of medication in plain, conscious, and unjustifiable disregard of the harm that might result; and, 4) Wilson's disregard of harm involved a substantial deviation from acceptable standards of conduct.

[11] In accordance with the well-settled standard of review for claims of insufficient evidence, we neither reweigh the evidence nor reassess the credibility of witnesses. *Bailey v. State*, 979 N.E.2d 133 (Ind. 2012). We review the evidence and all reasonable inferences drawn therefrom in a light most favorable to the conviction. *Id.* We will affirm the conviction if there is substantial evidence of probative value supporting each element of the crime from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. *Id.*

[12] In order to establish that Wilson committed Class C felony reckless homicide, the State was required to prove beyond a reasonable doubt that Wilson recklessly killed Cramer. Ind. Code § 35-42-1-5. The Code sets forth that a person engages in conduct recklessly, if the conduct involved is in plain, conscious, and unjustifiable disregard of the harm that might result, and the disregard involves a substantial deviation from acceptable standards of conduct. Ind. Code § 35-41-2-2(c) (West, Westlaw current with all 2015 Public Laws of the 2015 First Regular Session of the 119th General Assembly).

[13] Each of Wilson's claims are requests for this Court to reweigh the evidence or discredit testimony. In accordance with our standard of review, however, we

recite the evidence most favorable to the jury's verdict. Jeffrey Doris, a pharmacist from the Linton Family Pharmacy, testified that Leah picked up a prescription for Alprazolam in one milligram tablets the day of the accident. Johnson testified that Wilson and Leah each inhaled the powder from three Alprazolam tablets at her house.

[14] Wilson testified that he only takes Alprazolam at night because it makes him drowsy and that he would never drive if he believed the dose was impairing his function. Sorrenson, however, testified that he and his girlfriend observed Wilson's truck initially tailgate his vehicle, continuously cross over the center line then gradually float back into the proper lane of travel until Wilson's truck passed Sorrenson's. Sorrenson observed Wilson's truck dangerously cross over the center line and almost strike a red truck head on just prior to the accident. Sorrenson had traveled that same route five or six days a week for at least a year and had never observed such driving behavior on the winding road.

[15] Witnesses at the scene of the crash described Wilson's movements as being in slow motion and that his speech was slow, deliberate, and slurred. Detective O'Malley testified that he believed Wilson was under the influence of something because of his speech and actions. He obtained a search warrant for a blood draw which was executed, and the results of the test revealed that Wilson's blood contained Alprazolam at a concentration of 54.8 nanograms per milliliter. Wilson admitted having taken two Alprazolam pills two days prior to the accident. By contrast, Shanks testified that the concentration of 54.8

nanograms per milliliter would be consistent with taking three one-milligram pills of Alprazolam.

[16] In *Gantt v. State*, 825 N.E.2d 874, 878 (Ind. Ct. App. 2005), a panel of this court described the jury's function when faced with contradictory testimony.

> When two witnesses give contradictory accounts, it is not true that the jury *must* believe one or the other. The jury may choose to believe neither witness, believe aspects of the testimony of each, or believe the testimony but also believe in a different interpretation of the facts than that espoused by the witnesses, among other possibilities.

Thus, although Wilson has identified testimony that contradicted other testimony, it was the exclusive province of the jury to determine which evidence to believe.

[17] Although this case involves the use of medication and not intoxication, it bears similarities to the facts in *Nichols v. State*, 591 N.E.2d 134 (Ind. 1992). Nichols' conviction for reckless homicide was affirmed where the evidence showed he was seen driving across the center line for an extended period of time, and his vehicle was more than just barely across the center line. There was additional evidence that Nichols was intoxicated at the time of the accident, which resulted in the victim's death. In comparison, Wilson's vehicle was observed repeatedly crossing the center line almost striking a truck prior to colliding with Cramer's motorcycle in the wrong lane of travel resulting in Cramer's death. Wilson was observed earlier that morning inhaling three crushed Alprazolam tablets, which he was aware made him drowsy, and his speech and movements

were slow and deliberate at the scene of the crash. There is sufficient evidence to support the jury's verdict.

[18] Judgment affirmed.

Mathias, J., and Pyle, J., concur.