## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Oct 31 2017, 12:11 pm

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Mark S. Lenyo
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Larry D. Allen
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Jonathan Webster, *Appellant-Defendant,* | October 31, 2017 |
| | Court of Appeals Cause No. 71A03-1610-CR-2319 |
| v. | Appeal from the St. Joseph Superior Court |
| State of Indiana, *Appellee-Plaintiff.* | The Honorable John M. Marnocha, Judge |
| | Trial Court Cause No. 71D02-1509-FA-3 |

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Defendant, Jonathan Webster (Webster), appeals his conviction and sentence for child molesting, a Class A felony, Ind. Code § 35-42-4-3(a)(1).

We affirm.

# ISSUES

Webster presents four issues on appeal, which we restate as follows:

(1) Whether the State's comments during closing argument constituted misconduct;

(2) Whether the trial court abused its discretion by responding to a jury question;

(3) Whether the trial court improperly determined that Webster was a credit restricted felon; and

(4) Whether Webster's sentence is inappropriate in light of the nature of the offense and his character.

# FACTS AND PROCEDURAL HISTORY

M.W., who was born in June 1999, lived with her father, mother, brother, and sister. In September of 2006, M.W.'s family moved to a house on Caroline Street in South Bend, St. Joseph County, Indiana. In 2008, Webster, who is M.W.'s uncle, and M.W.'s paternal grandmother (Grandmother) moved into M.W.'s family home. Sometime thereafter, Webster molested M.W. The first

time, Webster and M.W. were alone in the living room and M.W. asked Webster to scratch her back. At first, Webster scratched M.W.'s back, but then he began moving his hand down M.W.'s lower back, he touched M.W.'s butt, and eventually slipped his finger inside M.W.'s vagina. Another time, M.W. was in the backyard of her family home playing. Webster joined M.W. outside and directed M.W. behind a shed where he squatted and put his finger inside M.W.'s vagina.

[5] In 2014, M.W.'s mother passed away, and sometime thereafter, M.W. began seeing a counselor. In June of 2015, M.W. disclosed to her counselor that Webster had molested her. M.W. also reported that she had nightmares of Webster molesting her. Based on the molestation claims, M.W.'s counselor contacted the Department of Child Services, and a forensic interview of M.W. was conducted at the Casie Center. On July 11, 2015, Webster was called for an interview at the St. Joseph County Special Victims Unit. During a recorded interview, Webster admitted that he rubbed M.W.'s back, and that during the back rub, he put his hand on M.W.'s "butt" underneath her underwear. (State's Exh. 2A). Webster additionally confessed that he had his hand in M.W.'s "privates," but he denied inserting his finger inside M.W.'s vagina. (State's Exh. 2A). Webster added that he rubbed M.W.'s back "more than once." (State's Exh. 2A). Webster also penned an apology letter to M.W. stating, in part, "I am very sorry for the things I did. I never wanted to hurt you. What I did was wrong." (State's Exh. 3).

On September 1, 2015, the State filed an Information, charging Webster with child molesting, a Class A felony. Following a jury trial on August 10, 2016, Webster was found guilty as charged. On September 7, 2016, the trial court conducted a sentencing hearing. At the close of the hearing, the trial court sentenced Webster to thirty years in the Department of Correction.

Webster now appeals. Additional facts will be provided as necessary.

# DISCUSSION AND DECISION

## I. *Prosecutorial Misconduct*

Webster argues that the State committed misconduct by referring to a decision from our supreme court during closing argument. To properly preserve appellate review of an improper argument made by the State during trial, the defendant must request an admonishment. *Cooper v. State*, 854 N.E.2d 831, 835 (Ind. 2006). If the admonishment is believed to be insufficient, then the defendant should move for a mistrial. *Id.* If properly preserved, we consider claims of prosecutorial misconduct under a two-step inquiry: "(1) whether the prosecutor engaged in misconduct, and if so, (2) whether the misconduct, under all of the circumstances, placed the defendant in a position of grave peril to which he or she should not have been subjected." *Id.* The gravity of peril is measured by the probable persuasive effect of the misconduct on the jury's decision rather than the degree of impropriety of the conduct. *Booher v. State*, 773 N.E.2d 814, 818 (Ind. 2002).

[9]     During closing argument, the State displayed a PowerPoint slide with a citation to *Bowles v. State*, 738 N.E.2d 1150 (Ind. 2000). Citing to *Bowles*, the State proceeded to state:

> A victim's testimony, even if uncorroborated is ordinarily sufficient to sustain a conviction for child molesting. And that's from the Indiana Supreme Court. All you need is to believe [M.W.]. One witness is enough.

(Tr. Vol. IV, p. 12). Following the State's argument, Webster's counsel sought permission for a sidebar conference. Outside the jury's presence, Webster's counsel asked whether the *Bowles*' case was part of the jury instruction and the State responded that it was not. Webster's counsel then proceeded to argue that even though the State had a right to cite case law, the trial court should issue "some kind of a cautionary instruction" to the jury. (Tr. Vol. IV, p. 13). In denying Webster's request, the trial court stated, "[T]he parties can argue case law, so long as it's not contrary to the instructions, [and] so long as the [c]ourt hasn't denied giving a particular instruction." (Tr. Vol. IV, p. 13). Here, Webster's request that the trial court should have issued *some kind of cautionary instruction to the jury* is equivalent to a request for admonishment. Thus, Webster must prove (1) that misconduct occurred, and if it did, (2) that the misconduct, considering all of the circumstances, placed him in a position of grave peril to which he would not have been subjected otherwise. *See Cooper*, 854 N.E.2d at 835.

[10] In the instant case, we only need to address the first prong—whether there was misconduct. We recognize that, as part of its closing argument, the State may argue both law and fact and propound conclusions based upon an analysis of the evidence. *Poling v. State,* 938 N.E.2d 1212, 1217 (Ind. Ct. App. 2010). This court and our Indiana Supreme Court have upheld child molesting convictions on the uncorroborated testimony of the victim on many occasions. *See, e.g., Hoglund v. State*, 962 N.E.2d 1230, 1239 (Ind. 2012); *Young v. State*, 973 N.E.2d 1225, 1227 (Ind. Ct. App. 2012); *Baber v. State*, 870 N.E.2d 486, 490 (Ind. Ct. App. 2007), *trans. denied.* The State's inclusion of our supreme court opinion in its closing argument did not amount to prosecutorial misconduct. Besides, we view the State's argument that the jury could convict Webster if it believed M.W.'s testimony as an appropriate characterization of the evidence, and its reference to the *Bowles* case as a proper statement of the law. *See Poling*, 938 N.E.2d at 1217; *Bowles*, 737 N.E.2d at 1152.

[11] Moreover, during the final instructions, the jury was reminded that closing arguments

> are not evidence but were made to help you evaluate the evidence. In final arguments, the attorneys are permitted to characterize the evidence, to argue the law and try to persuade you to a particular verdict. You may accept or reject those arguments as you see fit.
>
> ****
>
> Since this is a criminal case you are the judges of both the law and the facts, you have the right to determine the law for yourself. You may not, however, make, repeal, disregard or ignore the law as it exists.

These [jury] instructions are the best source as to the law applicable to
this case.

(Tr. Vol. IV, pp. 46, 48). Here, the trial court's final instructions were sufficient to cure any improper comments by the State. *See Emerson v. State*, 952 N.E.2d 832, 838 (Ind. Ct. App. 2011) (any misconduct in prosecutor's statement cured by court's general instruction regarding prosecutor's comment). Based on the foregoing, we conclude by stating that the State did not commit misconduct quoting *Bowles* in its closing argument.

## II. *Jury Question*

[12] After the jury retired to deliberate, the jury passed a note to the trial court consisting of two questions, the second of which is at issue in this appeal. Recapping the jury's question, the trial court stated, "One witness is enough with no corroboration ordinarily. What does ordinarily mean?" (Tr. Vol. IV. pp. 51-52 (quotation marks omitted)). Thereafter, the trial court advised the parties that it would instruct the jury on the dictionary definition of the word *ordinarily* from the American Heritage Dictionary, Second College Edition. Webster, through his counsel, objected to the instruction, but the trial court proceeded to instruct the jury with the dictionary-definition of the word "ordinarily." Webster now argues that the trial court abused its discretion by instructing the jury on the dictionary definition of the word "ordinarily," because that word "was an excerpt from the prosecutor's power point slide" which was used to bolster its argument during the closing arguments. (Appellant's Br. p. 12).

[13] A trial court's decision whether to respond to jury questions is treated on appeal in the same manner as jury instructions. *Gantt v. State*, 825 N.E.2d 874, 877 (Ind. Ct. App. 2005). Instructing the jury lies within the sole discretion of the trial court. *Id*. Jury instructions are to be considered as a whole and in reference to each other. *Id*. An error in a particular instruction will not result in reversal unless the entire jury charge misleads the jury as to the law in the case. *Id*. Before a defendant is entitled to a reversal, he or she must affirmatively show that the erroneous instruction prejudiced his substantial rights. *Id*. An error is to be disregarded as harmless unless it affects the substantial rights of a party. Ind. Trial Rule 61.

[14] In *Thomas v. State*, 774 N.E.2d 33, 36 (Ind. 2002), which Webster claims is analogous, the jury requested that the trial court reread the portion of the prosecution's closing argument that referred to a portion of an Indiana Supreme Court opinion. *Id*. at 34. Our supreme court determined that it was improper for the trial court to reread a section of the supreme court case as quoted by the State during closing argument "the way that it did" because it was not a valid point of law. *Id*. at 36. Nevertheless, the *Thomas* court determined that although the trial court's recitation of the case law to the jury was error, it was harmless under the circumstances because the instruction was cumulative of other evidence, and there was overwhelming evidence establishing the defendant's guilt. *Id*.

[15] Webster argues that even if the *Thomas* court determined that the jury instruction was harmless based on the fact that there was sufficient evidence

establishing the defendant's guilt, the same conclusion cannot be made in the present case. Specifically, Webster argues that:

> The present case dealt with acts which allegedly had occurred about ten (10) years prior. There was no scientific or forensic evidence supporting the conviction. M.W. had forgotten many of the pertinent details about the case and was impeached on a number of occasions due to her inconsistent statements regarding the offense.

(Appellant's Br. p. 16). To the extent that Webster asserts that M.W.'s testimony was less believable due to inconsistencies, we note that this is an issue of witness credibility. The function of weighing witness credibility lies with the trier of fact, not this court. *Whited v. State*, 645 N.E.2d 1138, 1141 (Ind. Ct. App. 1995). We cannot reweigh the evidence and judge the credibility of the witnesses. *Jones v. State*, 783 N.E.2d 1132, 1139 (Ind. 2003). Again, we reiterate that a conviction of child molesting may rest on the uncorroborated testimony of the victim. *Rose v. State,* 36 N.E.3d 1055, 1061 (Ind. Ct. App. 2015). Although he denied putting his finger inside M.W.'s vagina at his trial, Webster had confessed to the police during a recorded interview that he rubbed M.W.'s "back," he had his hand on M.W.'s "butt," and that he had his hand in M.W.'s "privates." (State's Ex. 2A). Webster also confessed that the back rubbing happened more than once. Additionally, M.W. unequivocally testified that Webster had, on more than one occasion, penetrated her vagina with his finger.

[16] Moreover, although not similar but close to the facts of this case, in *Shultz v. State*, 417 N.E.2d 1127, 1133-34 (Ind. Ct. App. 1981), we surveyed the opinions

of various jurisdictions with regard to a jury's use of a dictionary during deliberations. We held that the presence of a dictionary in the jury deliberation room did not raise a presumption of prejudice and did not constitute reversible error. *Id.* In sum, taking into account the *Thomas* and *Shultz* decisions, we conclude that the trial court did not prejudice Webster's substantial rights when it offered to the jury the dictionary-definition of the word ordinarily, and even if it was error, it was harmless. *See* Ind. Trial Rule 61.

### III. *Credit-Restricted Felon*

[17] Webster argues that the trial court's application of the 2008 credit restricted felon statute violated the federal and state constitutional prohibition against *ex post facto* laws. "An ex *post facto* law is one which applies retroactively to disadvantage an offender's substantial rights." *Armstrong v. State*, 848 N.E.2d 1088, 1092 (Ind. 2006). Both the United States Constitution and the Indiana Constitution prohibit *ex post facto* laws. U.S. Const. art. I, § 10; Ind. Const. art. 1 § 24. The *ex post facto* analysis is the same under both constitutions. *Upton v. State*, 904 N.E.2d 700, 705 (Ind. Ct. App. 2009), *trans. denied*.

[18] The credit restricted felon statute took effect on July 1, 2008, and applied "only to persons convicted after June 30, 2008." *Id.* at 704 (quoting Pub.L. 80-2008, § 6). The statute, in relevant part, defined "credit restricted felon" as:

> [A] person who has been convicted of at least one (1) of the following offenses:
>
> (1) Child molesting involving sexual intercourse or deviate sexual conduct (IC 35-42-4-3(a)), if:

(A) the offense is committed by a person at least twenty-one (21) years of age; and

(B) the victim is less than twelve (12) years of age.

Ind. Code § 35-41-1-5.5.[1]

[19] "A person who is a credit restricted felon and who is imprisoned for a crime or imprisoned awaiting trial or sentencing is initially assigned to Class IV. A credit restricted felon may not be assigned to Class I or Class II." I.C. § 35-50-6-4(b). Indiana Code section 35-50-6-3(d) provides that: "A person assigned to Class IV earns one (1) day of credit time for every six (6) days the person is imprisoned for a crime or confined awaiting trial or sentencing."

[20] In the instant matter, it is undisputed that Webster was at least twenty-one years old and that M.W. was less than twelve years old in July of 2008. On appeal, Webster claims that the criminal acts in question occurred

> between June, 2006 and June, 2007. The State's charging information alleges the acts took place between June 2, 2006 and June 2, 2007, prior to the July 1, 2008 effective date of the credit-restricted felon statute. . . . M.W. 's father, confirmed that . . . Webster was living at his residence where the acts occurred during the period of 2006 to

---

[1] Effective July 1, 2012, this statute was recodified under Indiana Code section 35-31.5-2-72.

2007. . . . M.W. also confirmed that the relevant time period was [between] June 2006 to June 2007.

(Appellant's Br. p. 18).

[21] In *Upton* v. *State*, 904 N.E.2d 700 (Ind. Ct. App. 2009), *trans. denied*, the defendant committed several child molesting offenses between 2003 and 2007. When he was sentenced, the trial court ordered that he would receive Class IV pre-sentencing credit time pursuant to the newly-enacted credit restricted felon statute. *Id*. at 705. We reversed the trial court's classification of the defendant as a credit restricted felon because it was an *ex post facto* violation because at the time he committed his offenses, the law did not so restrict the credit time he could earn. *Id.* Likewise, in *Gaby v. State*, 949 N.E.2d 870, 883 (Ind. Ct. App. 2011), we noted that the defendant, who was convicted of Class A felony child molesting in 2010, would appear to qualify as a credit restricted felon under the terms of the credit restricted felon statute. However, we concluded that, in light of our opinion in *Upton*, the application of the credit restricted felon statute to the defendant would be an *ex post facto* violation because the defendant committed his offense prior to the effective date of the statute. *Id*.

[22] Based on the above discussion, the pertinent question here is whether there is sufficient evidence to support the trial court's determination that Webster molested M.W. on or after July 1, 2008, the effective date of the credit restricted felon statute.

[23]     Indeed, the charging Information alleged that the Webster molested M.W. between June 2, 2006 and June 2, 2007. Also, at Webster's jury trial, M.W.'s father testified that Webster and Grandmother lived at his house for a short while, but moved out in 2007. In addition, when the State questioned M.W. whether the molestation occurred between June 2006 and June 2007, M.W. confirmed that was the particular time period.

[24]     Aside from the foregoing, our supreme court has held that even in the absence of a specific finding that an act of molesting occurred after the effective date of the credit-restricted felon statute, a credit-restriction designation does not violate the *ex post facto* prohibition if the evidence allows a reasonable jury to conclude that at least one incident of the charged conduct occurred after July 1, 2008. *See Sharp v. State*, 970 N.E.2d 647, 648 n. 1 (Ind. 2012) (violation of *ex post facto* prohibition not explored where victim testified that defendant committed the act about "every other weekend," the last of which would have been after July 1, 2008).

[25]     Apart from M.W.'s father testimony that Webster lived in his home, but moved out of his home in 2007, and M.W.'s testimony that the molestation occurred between June 2006 and June 2007; at his jury trial, Webster testified that "I lived at [M.W.'s home] from 2008 to 2010." (Tr. Vol. III, p. 112). In addition, during M.W.'s direct examination, the State presented M.W. with a picture of herself, and M.W. confirmed that the picture was from "2007 and 2008" when she was about "eight" years old. (Tr. Vol. III, pp. 35-36). Thereafter, M.W. averred that Webster molested her on at least two instances when she lived in

her family home on Caroline Street. Webster's own testimony that he lived at M.W.'s family home between 2008 and 2010, allows an inference that he molested M.W. after the effective date of the credit-restriction felon statute. Applying the same logic of the *Sharp* case to the instant case, we find no *ex post facto* violation, and conclude that the trial court properly designated Webster as a credit restricted felon.

## IV. *Inappropriate Sentence*

[26] Webster claims that his thirty-year sentence is inappropriate in light of the nature of the offenses and his character. Indiana Appellate Rule 7(B) empowers us to independently review and revise sentences authorized by statute if, after due consideration, we find the trial court's decision inappropriate in light of the nature of the offense and the character of the offender. *Reid v. State*, 876 N.E.2d 1114, 1116 (Ind. 2007). The "nature of offense" compares the defendant's actions with the required showing to sustain a conviction under the charged offense, while the "character of the offender" permits a broader consideration of the defendant's character. *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008); *Douglas v. State*, 878 N.E.2d 873, 881 (Ind. Ct. App. 2007). An appellant bears the burden of showing that both prongs of the inquiry favor a revision of his sentence. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006). Whether we regard a sentence as appropriate at the end of the day turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and a myriad of other considerations that come to light in a given case.

*Cardwell*, 895 N.E.2d at 1224. Our court focuses on "the length of the aggregate sentence and how it is to be served." *Id*.

[27] The advisory sentence is the starting point the legislature has selected as an appropriate sentence for the crime committed. *Abbott v. State*, 961 N.E.2d 1016, 1019 (Ind. 2012). For his Class A felony child molesting offense, Webster faced a sentencing range of twenty to fifty years, with the advisory sentence being thirty years. I.C. § 35-50-2-4. Here, the trial court imposed the advisory thirty-year sentence.

[28] Turning to the nature of the offense, Webster, who is M.W.'s uncle, inserted his finger inside M.W.'s vagina on at least two occasions. M.W. later reported that she had nightmares afterward of Webster molesting her. We do not believe that Webster's sentence was inappropriate in light of the nature of the offense. As for Webster's character, we note that one relevant fact is the defendant's criminal history. *Johnson v. State*, 986 N.E.2d 852, 857 (Ind. Ct. App. 2013). Webster correctly notes that that he has no criminal record, but his lack of a formal record is offset by the fact that he molested M.W. on multiple instances. Moreover, as M.W.'s uncle, he violated his position of trust with M.W. by molesting her, which speaks volumes of his unsavory character. Here, Webster has failed to meet his burden in persuading us that his sentence is inappropriate in light of his character. Having reviewed the matter, we conclude that the trial court did not impose an inappropriate sentence under Appellate Rule 7(B).

# CONCLUSION

[29] In sum, we conclude that the State did not commit misconduct by referencing case law during its closing argument; the trial court did not abuse its discretion by responding to a jury question; the trial court properly determined that Webster was a credit restricted felon; and Webster sentence is appropriate in light of the nature of the offense and his character.

[30] Affirmed.

[31] Robb, J. and Pyle, J. concur